THE STATE OF KANSAS, *ex rel.  Mayo Thomas,  as County Attorney, etc.,* v. GEORGE R. SNELLING, *as Judge, etc.*

No. 14,297.   (80 Pac. 966.)

SYLLABUS BY THE COURT.

INJUNCTION—*Jurisdiction of One Court to Enjoin Another— Mandamus Denied.*   A court having general jurisdiction, and having jurisdiction of the person, upon a petition therefor enjoined a county attorney, as such, from causing the arrest of the employees of a corporation engaged in laying pipe along the public highways for conveying natural gas. The same court, with like jurisdiction, also enjoined a magistrate from issuing process for the arrest of such employees for the alleged crime of obstructing the highways. Subsequently an attorney representing the state requested this magistrate to file a complaint charging said crime against such employees and issue warrants for their arrest.  `Held, that to do so would be violative of the terms of the injunction, and this court will not by mandamus require it of the magistrate.

Original proceeding in mandamus. Opinion filed May 6, 1905. Writ denied.

### STATEMENT.

THIS is an original proceeding in mandamus, brought by the state of Kansas upon the relation of Mayo Thomas, as county attorney of Montgomery county, to compel the Honorable George R. Snelling, as judge of the court of Coffeyville, in Montgomery county, to issue warrants for the arrest of John Doe and sixteen other men whose names were unknown, charged with the misdemeanor of wilfully and criminally obstructing a public highway of that county. Answering the alternative writ, the defendant has set up a state of facts the truth of which is admitted by a motion to quash in the nature of a demurrer. From this answer is gathered the following facts, the consideration of which will be sufficient to enable us to determine the propriety of allowing the writ:

On and prior to October 24, 1904, the Kansas Natural-gas, Oil, Pipe-line and Improvement Company, a corporation duly organized, existing and doing business under the laws of the state of Kansas, was engaged in placing its mains for the purpose of conducting natural gas from the wells producing the same in Montgomery county to other portions of this state, over, across and along the public highways in Montgomery county. On that date the sheriff of Montgomery county took into custody, without complaint or warrant, a number of the laborers who were then engaged in digging the necessary ditches along such highways. These men were taken before a justice of the peace of that county and charged with the crime of obstructing a highway because of the doing of the acts in which they were engaged. They were subsequently fined, and they appealed to the district court, where the cases are still pending.

On November 2, 1904, a petition was filed in the

Montgomery county district court by the gas company against the board of county commissioners of Montgomery county in their official capacities and as individuals; against the sheriff and his deputies in their official capacities and as indivduals; and against Mayo Thomas, as county attorney of Montgomery county and as an individual. This petition set out in detail the existence of the company, its object, what it was engaged in doing, its use of the roads and highways for the purpose of laying mains and pipes, the expenditure of large sums of money in its work, the interference of the sheriff in such work by the arrest of its laborers, as hereinbefore spoken of, and the threat on the part of the defendants to continue to interfere with the plaintiff in the laying of the pipes along the highways as it contended it had a right to do, and prayed for a temporary and a permanent injunction against the defendants, enjoining them from further interference with such work.

In this suit all the defendants made voluntary appearances and, without making any objection or taking any exception to the jurisdiction of the district court to hear and determine the same, fully submitted themselves and the matter in controversy to the jurisdiction of that court. On November 30 the court, after full consideration, ordered that the defendants—

"and each of them, their servants, agents, and employees, and all persons acting by, through or under them, or either of them, be, and they are, and each of them is, pending the final hearing and disposition of this cause, restrained and enjoined from further interfering with said plaintiff, or the persons or corporation with whom plaintiff has contracted for the construction of such pipe-line, and with the officers, agents, servants, employees and workmen of plaintiff and of such contractors, in the construction, maintenance and operation of said pipe-line, either by arrest and prosecution, upon a charge of obstructing public highway, or any other charge, or by threats,

intimidation or violence, or in any other manner whatever."

This order remains unrevoked and the suit is still pending. Thereupon, after having complied with the required order of the court to execute a bond for the restoration of the highway to its original condition, the gas company proceeded with its work on December 3; whereupon Judge Snelling and the marshal of his court, with several deputy marshals, caused the arrest of twenty-seven of the laborers engaged in digging the ditches for the laying of the pipe, and on December 5 the gas company filed another petition in the district court of Montgomery county for the purpose of enjoining Judge Snelling in his official capacity and as an individual, and the marshal of his court and his deputies, in their official capacities and as individuals, from further proceeding with that and other prosecutions. The allegations of the petition were in substance the same as those in the petition filed in the suit already spoken of, and added the charge that there was a conspiracy to injure the business of the plaintiff as a reason for the harassing arrests which had been made, setting out all the former actions, and prayed a temporary and a permanent injunction against the defendants, enjoining them from any further interference with the prosecution of the work of laying pipes and mains. Upon the hearing of the suit by the district court, without objection, a temporary injunction was granted against all of the defendants, in substance like the one granted in the former case, which injunction remains in force, and the suit is still pending in the district court of Montgomery county.

On December 9, W. E. Ziegler, Esq., an attorney at law, one of the attorneys for the relator in this action, informed Judge Snelling that he represented the state and, with full knowledge of all the proceedings had, orders made and actions pending in the district

court, tendered to Judge Snelling a verified complaint charging seventeen persons by fictitious names with obstructing the public highways in Montgomery county, by the digging of ditches, etc., and demanded the filing of the complaint and the issuance of warrants for the arrest of the persons engaged in such obstruction of the highway. This Snelling refused to do because the persons designated by fictitious names in the complaint were in truth the laborers and workmen of the gas company, engaged in the work of laying pipes and mains for the company, which work the district court of Montgomery county had held not to be an offense under the law, and because it in fact was not an offense, and because of the order of injunction which had been made by that court restraining Judge Snelling from interfering with the prosecution of the work by any proceeding issued out of his court.

The object of this proceeding is to compel Judge Snelling to file such complaint and issue the warrants for the arrest of such laborers.

*Waggener, Doster & Orr, Mayo Thomas, J. H. Dana,* and *W. E. Ziegler,* for The State.

*George R. Snelling, per se,* and *F. J. Fritch, C. E. Benton, S. H. Piper, H. C. Dooley, John J. Jones, James W. Lee, Cornelius D. Scully,* and *Eugene Mackey,* as *amici curiæ,* for defendant.

The opinion of the court was delivered by

CUNNINGHAM, J.: From the foregoing statement of facts it will be seen that we are asked to compel Judge Snelling to do the identical thing which Judge Flannelly, of the district court of Montgomery county, has forbidden him to do. Strong reasons must necessarily be found to warrant any such anomalous order. These are found to the satisfaction of the relator in the following propositions: That injunction will never lie to restrain the prosecution of a criminal

action, and hence no magistrate can ever be enjoined from the issuance of a warrant for the arrest of an alleged offender; that, therefore, Judge Flannelly being without jurisdiction, the order of injunction was without force upon Judge Snelling, and was but a mere *brutum fulmen,* and not only might, but should, be ignored by the latter when applied to for process.

A very great majority of the cases found in the books, where application has been made to a court of equity for injunctions to restrain the prosecution of criminal actions, announce the doctrine that equity courts will not so interfere; especially is this true where it is sought by such suits to test the constitutionality or validity of the ordinance or law under which an alleged criminal is being prosecuted. The general doctrine is a very just, proper and correct one, and it is almost inconceivable that a court endowed with the high prerogatives of equitable jurisdiction would by their use interfere in the ordinary proceedings of criminal courts. It is true, however, that in some cases, rare indeed, equity courts have rightly interfered to prevent prosecutions of criminal actions. This is especially so where criminal proceedings are being prosecuted with a spiteful purpose, and in other cases for the purpose, and with the effect, of interfering with the property rights of the citizen. (*The City of Atlanta et al. v. The Gate City Gas Light Co.,* 71 Ga. 106; *P. & A. V. R. R. Co. v. Prowers Co.,* 5 Colo. App. 129, 38 Pac. 112; *Dobbins v. Los Angeles,* 195 U. S. 223, 25 Sup. Ct. 18, 49 L. Ed. 169.) We have yet to find a case where a refusal to enjoin is put upon a denial of the inherent power to do so.

However, this is all aside from the question involved, which is not whether Judge Flannelly, of the district court of Montgomery county, should have granted such injunction, but whether he had power to grant it. The question is not whether this court shall enjoin the officers of a criminal court from pro-

ceeding in a criminal case, but whether it shall direct one who has been so enjoined by a court having jurisdiction of the subject-matter, and jurisdiction of the person, to violate such injunction. The district court of Montgomery county had jurisdiction to issue injunction, and it had jurisdiction of the person of Judge Snelling. Whether Judge Flannelly improvidently or erroneously made the order of injunction in question is beyond the scope of this discussion. It was made, and until its revocation in some proper manner it is to be obeyed. Any other rule would bring chaos into judicial proceedings, and clashing, worse confounded, between judicial tribunals.

This court has decided the matter in hand in the case of *The State v. Hornaday,* 62 Kan. 334, 62 Pac. 998, where in the syllabus it was said:

"Mandamus will not issue to compel the performance of an act the doing of which has been enjoined by another court vested with jurisdiction over the subject-matter and over the parties to the injunction proceeding, except that it may someimes issue in behalf of one who is not a party to the injunction, and whose rights can only be secured by its allowance."

What we have said with regard to Judge Snelling applies with equal force to the county attorney, Mayo Thomas, and it seems that he, appreciating the force of these considerations, refrained from appearing in person to procure the issuance of the warrants, as it appears that Mr. Ziegler represented the state in the application. Admitting that this change of front was in all respects *bona fide,* it is not such a one as appeals with any great force to a court when asked to order the issuance of the discretionary writ of mandamus.

It is, however, urged by the relator, and this is probably the real ground of his contention, that, granting the binding force of the orders made by Judge Flannelly upon the officers named as men, such orders do not and cannot bind the state of Kansas; that it was not a party, could not have been made a

party, and could not have been bound had it been a party; and that, although Mayo Thomas, as county attorney, and thus representing the state, was enjoined from prosecutions, any other person may volunteer on behalf of the state to promote or effectuate such prosecutions notwithstanding the order of injunction. We think this would be but to juggle with judicial orders. No one but the county attorney, or the attorney-general on proper occasion, or persons deputized by them, may control prosecutions within a county. No claim is made that Mr. Ziegler was acting for the attorney-general. We may therefore fairly assume that he was acting for the county attorney in representing the state. We think, however, that where a prosecuting officer who under the law represents the state or a judicial officer who is an efficient part of the state's machinery in effectuating the law has been enjoined in his official capacity from the doing of a given act, it is substantially an injunction against the state.

In *Harkrader v. Wadley,* 172 U. S. 148, 19 Sup. Ct. 119, 43 L. Ed. 399, Mr. Justice Shiras, in speaking for the court, said:

"In the present case the commonwealth's attorney, in the prosecution of an indictment found under a law admittedly valid, represented the state of Virginia, and the injunctions were therefore in substance injunctions against the state. In proceeding by indictment to enforce a criminal statute, the state can only act by officers or attorneys, and to enjoin the latter is to enjoin the state. As was said in *In re Ayers,* 123 U. S. 443, 497: 'How else can the state be forbidden by judicial process to bring actions in its name, except by constraining the conduct of its officers, its attorneys, and its agents? And if all such officers, attorneys and agents are personally subjected to the process of the court, so as to forbid their acting in its behalf, how can it be said that the state itself is not subjected to the jurisdiction of the court as an actual and real defendant?'" (Page 169.)

In the case of *Arbuckle v. Blackburn*, 51 C. C. A. 122, 113 Fed. 616, 65 L. R. A. 864, the object was to enjoin the food commissioner, an officer of the state of Ohio, from prosecuting certain alleged violations of a criminal law of Ohio, on the alleged ground of its unconstitutionality. In discussing the question now under consideration Judge Day said:

"This is virtually to enjoin the state from proceeding through its duly qualified and acting officers. If the food commissioner may be enjoined from instituting such prosecution, why may not the prosecuting attorney, or any officer of the state charged with the execution of the criminal laws of the state? While the state may not be sued, if the bill can be sustained against its officers it is as effectually prevented from proceeding to enforce its laws as it would be by an action directly against the state. This view of the case, in our judgment, is amply sustained by the cases above cited, and by the later case of *Fitts v. McGhee*, 172 U. S. 516, 43 L. Ed. 535, 19 Sup. Ct. 269, in which the subject is fully discussed by Mr. Justice Harlan." (Page 130.)

If we shall by fine-spun theories be able to distinguish between the state in its intangible entity and as represented by its officers and agents, the fact still remains that orders of injunction were made, by a court having jurisdiction of the persons against whom they were made, by which these officers were forbidden to do certain acts, and that one of these officers is now here as relator seeking an order of this court to compel the other officer to disobey such orders. This is sufficient reason, if none other exist, why we should refuse the discretionary writ of mandamus. If the district court of Montgomery county was wrong in granting the injunction let its action be reviewed by due proceedings. The writ is denied.

All the Justices concurring.