No. 44,278

Edwin Addington, *Appellant*, v. State of Kansas, *Appellee.*

(424 P. 2d 871)

Opinion filed March 4, 1967.

*Jack N. Stewart,* of Salina, argued the cause and was on·the briefs for appellant.

*Bill Crews,* County Attorney, of Salina, argued the cause, and *Robert C. Londerholm,* Attorney General, of Topeka, was with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: The appellant, Edwin Addington, has appealed from the district court's judgment overruling his motion (K. S. A. 60-1507) to vacate and set aside the sentence of the district court imposed upon him on May 9, 1963, for a term of not less than fifteen years confinement in the Kansas State Penitentiary pursuant to the Kansas Habitual Criminal Act. (K. S. A. 21-107a.)

The appellant is hereafter referred to as the defendant.

Pertinent dates and proceedings leading up to the defendant's trial and conviction by a jury in the district court follow: On November 9, 1962, the defendant was arrested upon a warrant issued out of the City Court of Salina, charging him with the larceny of a Buick automobile. On December 28, 1962, at the request of the defendant, a preliminary examination was held before the judge of the City Court of Salina and the defendant was bound over for trial in the district court. Evidence was introduced by the state at the preliminary examination, but the defendant offered no evidence, nor was he represented by counsel.

On February 13, 1963, an Information was filed in the district court charging the defendant with the larceny of the Buick automobile, but it failed to allege that the value of the automobile was over $50. Later, and on March 12, 1963, the Information was amended and alleged the value of the automobile to be in excess of $50, which was the only amendment made.

On February 21, 1963, the defendant was brought before the Honorable L. A. McNalley, district judge, at which time Mr. Harold Henderson, a practicing attorney of Saline County, was appointed to represent him in the action.

On April 4, 1963, the county attorney wrote counsel for the defendant advising that in the event the defendant was convicted, the

state would ask the court to impose sentence pursuant to the Habitual Criminal Act.

On April 5, 1963, at the defendant's request, a commission of doctors was appointed to examine him to determine whether he was able to comprehend his position and make his defense. The report of the commission finding the defendant to be sane, competent and able to stand trial was filed April 15, 1963.

On April 16, 1963, the case came on for trial before the Honorable John I. Young upon the amended Information and the defendant's plea of not guilty. The court accepted the commission's report, and the following proceedings occurred:

"THE COURT . . . In this case I believe an amended information was filed in which was set forth the value of the particular personal property which the original information charged was taken by the defendant. In order that the record may be clear, I want to be certain that the defendant has or does now waive the service of a warrant, filing of the complaint and a preliminary hearing on the amended information.

"MR. HENDERSON: Would you give me just a minute?

"THE COURT: Yes.

"MR. HENDERSON: Your Honor, I believe at the time of the amendment to the information, the preliminary hearing was waived. We are aware of the amendment to the information and at this time for the record will waive the arraignment—the preliminary hearing.

"THE COURT: The record would indicate that waiver was made at the time of filing. However, it is not sufficiently clear to satisfy the Court. The Court would want to be certain. You understand what we are talking about?

"THE DEFENDANT: Yes, sir.

"THE COURT: It is correct and do you waive the filing of another complaint, service of a warrant and preliminary hearing on the amended information in this case?

"THE DEFENDANT: Yes, sir, I will.

"THE COURT: And you understand what the amended information does, how it changes the original; it simply sets forth the value, the alleged value of this car.

"THE DEFENDANT: Yes, sir, I understand."

Whereupon, a jury was selected and duly impaneled, and the state presented its evidence and rested. The defendant's motion for discharge upon the ground the state's evidence was not sufficient to establish his guilt was overruled, and he waived his opening statement, offered no evidence, and rested his case. Thereupon, the trial was adjourned until the following day.

On the following morning, April 17, 1963, the trial was resumed. The jury was fully instructed and arguments of counsel for the state and the defendant were made to the jury. At the conclusion

of the argument of his counsel, and notwithstanding the fact he did not testify in his own behalf, the defendant requested he be permitted, personally, to address the jury in his own behalf. The request was denied by the court. Following the closing argument of the state, the jury retired and on that same day, it returned its verdict finding the defendant guilty of larceny of the automobile as charged in the amended Information.

A motion for a new trial was timely filed. The defendant personally argued, as did his attorney, in support of the motion, which was overruled by the district court on April 29, 1963.

The sentencing of the defendant was continued until May 9, 1963. On that date the state introduced evidence consisting of duly certified copies of the defendant's prior felony convictions; one of grand larceny in the Circuit Court of Washington County, Arkansas, on April 24, 1951, and another of larceny of an automobile in the District Court of Montgomery County, Kansas, on September 8, 1952. No objection was made by the defendant or his attorney to the introduction of such evidence and the court proceeded to sentence the defendant pursuant to the Habitual Criminal Act for the term of years heretofore stated. No appeal was taken by the defendant from the judgment and sentence rendered, or from the order overruling the motion for a new trial.

On August 28, 1964, the defendant wrote the district judge and requested his letter be treated as a motion to vacate and set aside the sentence pursuant to K. S. A. 60-1507. He alleged as grounds for relief that (1) he did not have counsel at his preliminary examination or at arraignment and that counsel appointed to represent him in the district court was incompetent, resulting in his not having a fair and impartial trial; (2) in accordance with *Escobedo v. Illinois,* 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. St. 1758 (enlarged by counsel to include *Miranda v. Arizona,* 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602), he was entitled to consult with counsel as soon as the investigation conducted by the highway patrol made him a prime suspect, and (3) he was unlawfully sentenced as an habitual criminal, and that prior convictions relied upon to enhance the penalty were null and void because of *Gideon v. Wainwright,* 372 U. S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792.

On September 3, 1964, the district court held a hearing on the defendant's motion. After reviewing the record and examining the motion, it made findings of fact and conclusions of law that no

substantial questions of law or issues of fact were presented, and that neither the defendant's presence at the hearing nor the appointment of counsel to represent him was necessary; that his sentence was proper, and that the motion should be denied.

On October 1, 1964, the defendant filed a notice of appeal from the judgment entered by the district court, and requested the appointment of counsel to assist him in prosecuting his appeal. On that same day the court made additional findings of fact to supplement those made on September 3, and appointed Morris V. Hoobler, a member of the Saline County Bar, to represent the defendant.

Counsel prepared and filed a proper notice of appeal, and requested he be furnished a complete copy of the court files and a transcript of all proceedings had in the criminal case in which the defendant was convicted. The state stipulated in writing with counsel, granting the request.

Thereafter, and on April 22, 1965, Mr. Hoobler filed his request to withdraw as counsel for the defendant, which was granted by the district court, and Mr. Jack N. Stewart, a member of the Saline County Bar, was appointed to represent the defendant in this appeal.

The defendant first argues he was denied the constitutional right to assistance of counsel at his preliminary examination. The point is not well taken. An accused has no constitutional right to the appointment of counsel at the preliminary examination and failure to provide him with counsel at such time does not constitute error in the absence of prejudice to his substantial rights. (*Lee v. State,* 197 Kan. 371, 416 P. 2d 285, and cases cited.) The defendant did not allege, nor does the record suggest, any evidence of prejudice to his substantial rights. The record clearly shows the defendant in open court and in the presence of his attorney, knowingly waived his right to a preliminary examination on the charges contained in the amended Information. Moreover, under the circumstances which attend, the subject of preliminary examination is no longer material. See, *State v. McCarther,* 196 Kan. 665, 671, 414 P. 2d 59; *State v. Ward,* 198 Kan. 61, 422 P. 2d 961.

The record shows that at the hearing of the motion for a new trial, the district court permitted the defendant to personally raise and argue the point that he was represented by incompetent counsel. The defendant argued that "witnesses were dismissed before being properly examined by my counsel"; that there were "times during this trial that the witnesses could have been called

back to the stand and there would have been a lot of truth come, out if they had been properly examined by my counsel," and that, "the prosecutor led the witnesses when there should have been an objection which my counsel" neglected to make. In overruling the motion for a new trial, the district court commented at length upon, counsel's representation of the defendant, and stated:

"It would appear to the Court that counsel for the defendant did every-thing possible in behalf of the defendant in the examination of the witnesses and in the conduct of the trial."

And, further, that:

"The Court will repeat again in its opinion in observing the conduct of the trial, counsel for the defendant acted, pursued the matters involved in this; case, the testimony and the evidence, conducted the trial of this case in a, sufficient and unobjectionable manner, did everything that the Court can see that he could have done to protect the rights of this defendant, to attempt to obtain an acquittal."

The contention that counsel appointed to represent the defendant was incompetent, is completely refuted by the record.

The record shows that, after being alterted by a "pick-up" order from the Salina police department, the defendant was arrested by two members of the highway patrol while has driving the Buick automobile south of Salina on U. S. Highway 81; that the patrolmen placed the defendant in the patrol car and questioned him, and that the defendant admitted he stole the automobile from a parking lot in Salina that afternoon, and was going to his home in Newport, Arkansas. The defendant argues the rule announced in *Escobedo v. Illinois,* supra, and *Miranda v. Arizona,* supra, both involving the interrogation of suspects by the police, should here be applied because he was not advised of his rights to remain silent or to the assistance of counsel prior to being questioned by the patrolmen.

In making the contention, the defendant concedes that *Escobedo* and *Miranda* are inapplicable since they were decided after the defendant's trial began on April 16, 1963. (*Johnson v. New Jersey,* 384 U. S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772.) He contends, however, that those cases only establish a *minimum* standard for compliance with the Constitution of the United States, and argues the constitutional principles announced should now be applied retroactively by this court to the instant case. We decline to do so. Such a holding would seriously disrupt the administration of the criminal laws of this state and might require the retrial or release

of numerous prisoners found guilty by competent and trustworthy evidence. See, *Johnson v. New Jersey,* supra.

The defendant advances three points why the Habitual Criminal Act was unlawfully invoked when he was sentenced by the district court. *First,* that prior to the filing of the amended Information, the county attorney informed the defendant the state "would invoke the Habitual Criminal Act if he insisted on a jury trial, but would not invoke the Act if he pled guilty," making application of the Act the result of deliberate, intentional and arbitrary action by the county attorney to deprive him of his constitutional right to a trial by jury, denying him due process of law, and requiring the sentence to be vacated under K. S. A. 60-1507; *second,* that the county attorney's letter of April 4, 1963 (conveying the state's intention to invoke the Act), had a coercive effect in the nature of a threat which affected his judgment in making his defense and prevented him from taking the witness stand and testifying in his own behalf "and feel free as a man who was innocent," and *third,* that the purported evidence of the prior Arkansas felony conviction should not have been received in evidence by the district court.

With respect to the defendant's first contention, he argues that the Habitual Criminal Act can only be invoked by the county attorney; that the district court has no discretion in imposing sentence under the Act, but that the discretion as to its application is vested solely in the county attorney who must base his decision as to whether the Act will be invoked upon some valid and proper reason in the interest of society, and for an abuse of that discretion, the invocation of the Act is improper, illegal and void, subjecting the sentence imposed to be vacated under K. S. A. 60-1507, as constituting a denial of due process of law, and he relies upon *Gladen v. State,* 196 Kan. 586, 413 P. 2d 124.

Under our law, it is the duty of the county attorney to conduct criminal prosecutions on behalf of the state, and all steps in the trial are likewise under his supervision and control (*State v. Wells,* 54 Kan. 161, 165, 37 Pac. 1005; *State v. Snelling,* 71 Kan. 499, 506, 80 Pac. 966; *Foley v. Ham,* 102 Kan. 66, 69, 169 Pac. 183), including the exercise of discretion to invoke the Habitual Criminal Act in a proper case, upon reasonable notice of the state's intention to do so. The good faith of the county attorney is a material issue bearing upon his motives when invoking the Act (*State, ex rel., v.*

*Foster,* 32 Kan. 14, 3 Pac. 534; *State v. Trinkle,* 70 Kan. 396, 78 Pac. 854), since the exercise of discretion in the performance of his duties implies conscientious judgment rather than arbitrary action, and takes account of the law and the particular circumstances of each case. It is much the same as the exercise of discretion by a judge. Such discretion must be exercised fairly, wisely, and in accordance with the established principles of law; and includes the right to choose a course of action, not willfully or in bad faith, but only with respect to what is right under the circumstances. If the county attorney acts corruptly, willfully and in bad faith in invoking the Act, the sentence imposed thereunder may be vacated pursuant to K. S. A. 60-1507, but the burden of proof rests upon the movant. (*In re Skinner,* 136 Kan. 879, 18 P. 2d 154; *Gladen v. State,* supra, and *State v. Coutcher,* [No. 44,557], 198 Kan. 282, 424 P. 2d 865.)

Counsel for the defendant concedes in his brief "there is no evidence in the record that the county attorney and his assistant made this statement," that is, that they informed the defendant the Act would be invoked if he stood trial but would not be invoked if he pleaded guilty. Moreover, at the hearing of the motion for a new trial, counsel for the defendant advised the district court that, prior to the receipt of the county attorney's letter of April 4, 1963,. he and the defendant discussed the advisability of the defendant testifying in his own behalf, and both concluded that, in view of the defendant's previous record, it would be inadvisable for him to do so. In addition, the defendant advised the district court it was his personal decision not to testify in his own behalf, and, further, that the county attorney's letter did not coerce or force him to enter a plea of guilty. In overruling the motion for a new trial, the district court stated:

"It (the county attorney's letter of April 4) contains no promise or indication that if the case is not tried by a jury that the county attorney would not invoke the habitual criminal act. It makes no threat that it will be done because a jury trial is held or anything of that nature. By its very words, it simply advises the defendant's counsel that a few days before the date set for trial of the action that if there is a conviction he intends to ask that the habitual criminal act apply. It would not have been necessary for the county attorney to even extend that courtesy to defendant's counsel. The Court takes that as simply a courteous manner of advising counsel what the county attorney intended to do. The Court is unable to find in this anything in the nature of a threat, promise or anything else that would affect—obviously it

did not affect the judgment of either counsel or the defendant as far as having a jury trial is concerned."

In *Gladen v State,* supra, it was said:

". . . There is a presumption that a public official will act fairly, reasonably and impartially in the performance of the duties of his office. (*Lyerla v. Lyerla,* 195 Kan. 259, 403 P. 2d 989; *Sutherland v. Ferguson,* 194 Kan. 35, 397 P. 2d 335; *State v. Emory,* 193 Kan. 52, 391 P. 2d 1013, cert den. 379 U. S. 906, 13 L. Ed. 2d 179, 85 S. Ct. 200.) . . ." (l. c. 590.)

There is absolutely nothing in the record which supports the defendant's charge of abuse of discretion on the part of the county attorney in invoking the Habitual Criminal Act.

In passing, we observe that had his attorney failed to advise him of the possibility of sentence under the Act, or had the county attorney failed to give notice of the state's intention in that respect, the defendant would have added such failure as an additional ground to vacate and set aside the sentence. (*Fields v. State,* 195 Kan. 718, 720, 408 P. 2d 674.)

Turning to the defendant's second contention, that the county attorney's letter of April 4, prevented him from testifying in his own behalf, we again refer to the record and to the district court's comments disposing of this and other contentions. The court stated:

". . . This defendant elected to go to trial and did go to trial, made a defense. So the Court can only assume that anything that might have been said or written for that matter about the State's intention to ask the habitual criminal act be invoked if a trial was held, the Court can only conclude that had no effect upon this defendant. He intimates that in some way or another it made him uneasy about appearing or taking the stand. That reasoning is somewhat difficult for the Court to follow. That statement is exceedingly difficult for the Court to believe, because it did not in any way prevent him from exercising his right to a trial by jury and pursuing his defense throughout the trial through his counsel . . . If any statements that had been made concerning the habitual criminal act had any effect upon the defendant, it is expected that the normal effect would be to reach his judgment as to whether or not he would enter a plea or whether he would have a trial. He elected to have a trial. To say that such statements had no effect with respect to that decision, then that they could have had any effect in keeping him from taking the stand in his own defense seems to this Court completely illogical and without foundation . . . The Court has simply been shown nothing to indicate any coercion of this witness or any threats which would have affected his judgment or did affect his judgment or his defense in this case."

In his third contention, the defendant asserts that prior felony convictions relied upon to enhance the penalty were null and void. The record refutes the contention. The journal entry of the de-

fendant's conviction in the district court is a part of the record. Likewise, certified copies of journal entries of the defendant's two prior convictions are also a part of the record. Both journal entries show that the defendant was represented by counsel who were present in open court with him at the time he entered his pleas of guilty to the criminal offenses charged and when sentences were imposed. While the journal entry of the circuit court of Washington County, Arkansas, does not contain the signature of the circuit court judge, it is certified by the circuit court clerk as being a true copy of the criminal record entry on file in that office in the case of State of Arkansas versus Ed. L. Addington, No. 2027, Grand Larceny. We are cited to no statute of that state requiring the judge of the circuit court to sign journal entries. The record affirmatively shows both the defendant and his counsel were aware of the defendant's prior convictions, and had been timely advised by the county attorney that application of the Act would be sought when sentence was imposed. While the record does not contain the proceedings on May 9, the journal entry of conviction shows the court inquired of the defendant if he knew of any reason why the judgment and the sentence of the court should not be imposed, and he answered that he had no reason to give. If the Arkansas journal entry was objectionable because of lack of signature of the circuit court judge, the time to make the objection was then, not now.

The defendant next contends he is denied full judicial review in this appeal for the reason a transcript of the entire proceedings was not furnished him. Following the trial and sentence of the defendant, the court reporter who reported those proceedings retired and moved from the state of Kansas. Defendant's present counsel requested him to furnish a transcript of all the proceedings, at the expense of Saline County. He advised counsel he was unable to prepare a transcript. The court reporter succeeding him found a part of his record of the proceedings in the courthouse at Salina, from which he supplied counsel with a transcript of all the proceedings, except the following: April 5, ordering the appointment of the commission to inquire into the defendant's sanity; April 10, substituting one medical doctor for another on the commission; April 15, the report of the sanity commission; April 17, argument of counsel to the jury (a copy of the court's instructions is included in the record), and May 9, when sentence was imposed.

The transcript supplied counsel contained the record of the entire

trial (except counsel's argument to the jury), and the hearing on the motion for a new trial. It is not stated why or how or to what extent the absence of those portions of the transcript denied the defendant appellate review, and no specific point is made in what respect his substantial rights were prejudiced. While the transcript did not contain the argument of counsel on April 17, the defendant's only complaint is that he was denied the right to personally address the jury after his counsel had concluded his argument in his behalf. At most, if this was error, it was a trial error which could only be corrected on direct appeal. Likewise, the transcript did not contain the proceedings on May 9, but, again, the defendant's only complaint of what occurred on that date is that he was sentenced under the Habitual Criminal Act. The record clearly shows he was so sentenced, and in accordance with law. Obviously, the defendant has failed to show any prejudice to his substantial rights in presenting this appeal, and his argument that he is denied full judicial review is without merit.

Other points have been raised by the defendant, but they are trial errors which could be corrected only upon appeal from his conviction and, as such, present no justiciable question in a proceeding to vacate and set aside the sentence under K. S. A. 60-1507. (See, Rule No. 121, [c] [4], 194 Kan. xxvii.)

In view of the foregoing, the findings of the district court that no reason existed for it to grant a plenary hearing, produce the defendant for such hearing, or appoint counsel to represent him, were fully justified, and it did not err in denying the defendant's motion.

The judgment is affirmed.