No. 46,676

The State of Kansas, *Appellee,* v. Gary D. Pruett, *Appellant.*

(515 P. 2d 1051)

Opinion filed November 3, 1973.

*Clyde Wendelken,* of Wendelken, Cline and Crockett, of Wichita, argued the cause, and *Charles M. Cline* and *David G. Crockett,* of the same firm, were with him on the brief for the appellant.

*Clifford L. Bertholf,* Assistant District Attorney, argued the cause, and *Vern Miller,* Attorney General, *Keith Sanborn,* District Attorney, and *Gary Austerman,* Legal Intern, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal by the defendant in a criminal action. The defendant-appellant, Gary D. Pruett, was tried by the district judge sitting without a jury. He was convicted and sentenced under an information charging aggravated battery as defined by K. S. A. 1971 Supp. 21-3414 in count one and aggravated escape from custody as defined by K. S. A. 1971 Supp. 21-3810 in count two. In this opinion we will refer to the appellant as the defendant or Pruett.

This case arose out of an altercation which occurred at the Knotty Pine Tavern in Wichita on August 5, 1971. A controversy arose among certain patrons of the tavern including the defendant and his mother. The bartender, Larry Stepp, attempted to quiet the patrons. The defendant took umbrage at certain words uttered by the bartender. The defendant struck the bartender on the side of the head with a beer glass causing a gash which required 12 stitches. Defendant claimed that he struck the bartender in self-defense. There also was a dispute as to whether the defendant already had the beer glass in his hand or picked it up prior to striking the blow. After striking the bartender the defendant picked up a pool cue and swung it at various people in the tavern. He broke the pool cue upon the hands of another patron and ran out of the tavern where he was apprehended by a police officer who had been called to the disturbance. The police officer informed the defendant Pruett that there was enough evidence to charge him with aggravated assault and proceeded to give him the *Miranda* warning. The officer arrested the defendant and attempted to place him in the police car. Defendant started to run away but was quickly recaptured and taken to the police station. There he was booked on charges not disclosed by the record and was promptly taken by the paddy wagon to the City Prison Farm. While being unloaded from the paddy wagon the defendant again ran off and was recaptured within an hour and returned to the City Prison Farm. On the following day, August 6, 1971, a complaint was filed charging defendant with aggravated battery under count one and aggravated escape from custody designated as a misdemeanor under count two. The defendant was bound over to the district court on both counts following a preliminary hearing. The county attorney thereafter filed an information charging de-

fendant in count one with aggravated battery and in count two with "aggravated escape custody-misdemeanor." The printed word "feloniously" was stricken out of count two of the information.

On November 15, 1971, the case was called by the Honorable Howard C. Kline, Judge of Division No. 2 of the district court. With counsel present the defendant waived trial by jury and the case was set for trial on December 20, 1971. On December 20 the case was assigned to the Honorable William C. Kandt, Judge of Division No. 1 of the district court. When Judge Kandt called the case Mr. Wendelken answered ready for trial on count one, the charge of aggravated battery, and announced the defendant's readiness to enter a plea of guilty on count two to a charge of escape from custody as a misdemeanor under K. S. A. 21-3809. The deputy county attorney, S. A. Issinghoff, immediately moved for a continuance because the bartender was not available as a witness at that time. The deputy county attorney then announced to the court that the defendant had been charged in count two under the wrong statute in that he should have been charged under K. S. A. 21-3809, escape from custody, a misdemeanor. At the direction of the court Mr. Issinghoff described the factual circumstances arising out of the fracas at the Knotty Pine Tavern. At that point the following colloquy took place between court and counsel:

"THE COURT: And had he been charged yet at the time of this case?

"MR. ISSINGHOFF: He had been charged but held for State Warrant, held pending the issuance of State Warrant.

"THE COURT: And later when the State Warrant was served and he was apprehended, he was charged with aggravated battery, is that correct?

"MR. ISSINGHOFF: Yes.

"THE COURT: And this is a felony under the new code?

"MR. ISSINGHOFF: As it now reads it is, your Honor, but the State, number one, is not in position to try it; and number two, if we were going to trial the State would move to amend that to a misdemeanor, simple battery.

"THE COURT: Well, it would appear that the Information has correctly charged this person with aggravated escape for the reason he was being held and later charged with having committed a felony. The definition for aggravated escape under the new code for criminal procedure is escaping while held in lawful custody on a charge or a conviction of a felony.

"MR. ISSINGHOFF: Well, based upon the facts that we just made known to the Court, the State moves then to amend Count Two to conform substantially with 21-3809, which I believe, relates to persons escaping who are being held on a misdemeanor.

"THE COURT: Except the facts do not show he was held for a misdemeanor and we could not accept a modification or amended Information which does

not conform to the facts. The Information should be amended to change the word misdemeanor to a felony since he was being held in lawful custody upon a charge of a felony as it later developed, so the suggested amendment does not conform to the facts and cannot be accepted. But the Information is amended to change the word 'misdemeanor' to 'felony' since obviously this is a mistake in the typing of the Information.

"Mr. Wendelken: In which case, your Honor, I don't think my offer to have the defendant plead guilty to violation of 21-3809, as I thought Count Two contained, would stand up, so I suppose the defendant is ready for trial on Count One, if need be, or Count Two, if need be.

"The Courts: The Information under the facts related correctly charges the defendant with an offense under K. S. A. 21-3810, and the Information labeled this as aggravated escape custody but mistakingly referred to it as a misdemeanor rather than a felony. So, it is found that the defendant has been fairly notified that he has been charged with aggravated escape, a felony under the statute cited.

"Therefore, this case will be continued for trial until tomorrow morning at nine-thirty o'clock. All witnesses please return tomorrow morning at nine-thirty at which time this case will proceed to trial. And regardless of what happens to the first count, it will proceed to trial on the second count as a felony rather than a misdemeanor.

"Nine-thirty tomorrow morning, please.

"Mr. Wendelken: For the record, I would object to the amendment

"The Court: Very well, Court is adjourned."

On the morning of December 21, 1971, the following colloquy took place between Judge Kandt and counsel before any proceedings were had in the trial of the case.

"The Court: The Pruett case is the first case for trial this morning. Will it proceed to trial?

"Mr. Wendelken: Yes, but before we commence the trial I would like to make the motion that this case be transferred to the jury docket.

"The Court: The motion is overruled.

"Mr. Wendelken: And next I would like to make a motion for an order removing the witnesses from the courtroom pending their testimony.

"The Court: So far as the removal to the jury docket is concerned, was a jury properly waived in the arraignment court by all parties concerned?

"Mr. Wendelken: [November 15, 1971], yes.

"Mr. Issinghoff: It was.

"The Court: Thank you. This case will then proceed to trial. The Houpt case—I think to save your coming back again, will have to be set this afternoon. . . .

"Proceed, please."

The case proceeded to trial before Judge Kandt and was concluded about noon. After argument by counsel the court found that aggravated assault was committed by the defendant and that he must be found guilty of having committed that offense. The court

also found the defendant guilty of aggravated escape from custody under count two. Counsel for defendant suggested a presentence report prior to sentencing. The court denied postconviction bond and fixed Thursday of the same week for sentencing. The trial court said that the defense might argue for a new trial at that time, if desired. On December 23, 1971, defendant's motion for arrest of judgment and for a new trial were argued and overruled. The court refused to consider probation. The defendant was sentenced on both counts to the custody of the director of penal institutions. The defendant has brought an appeal to this court.

The defendant's first claim of error on this appeal is that the trial court erred in not permitting the prosecutor to amend count two of the information to charge escape from custody, a misdemeanor, under K. S. A. 21-3809 instead of 21-3810, aggravated escape from custody, a felony. We agree with the defendant that the trial court abused its discretion in refusing to permit the state to amend the information as it requested. Throughout the judicial history of this state this court has consistently held that a criminal proceeding is a matter of state concern and the control of it is in the county attorney. The rule has most recently been stated in *State v. Kilpatrick*, 201 Kan. 6, 439 P. 2d 99, where we declared:

"The county attorney is the representative of the state in criminal prosecutions, and as such he controls these prosecutions. He has the authority to dismiss any charge or to reduce any charge . . ." (p. 17.)

In support of this position the court cites *State v. Wilson*, 24 Kan. 189; *State v. Wells*, 54 Kan. 161, 37 Pac. 1005; *State v. Snelling*, 71 Kan. 499, 80 Pac. 966; *In re Broadhead*, 74 Kan. 401, 86 Pac. 458; *Foley v. Ham*, 102 Kan. 66, 169 Pac. 183; and *State, ex rel., v. Court of Coffeyville*, 123 Kan. 774, 256 Pac. 804. In *State v. Finch*, 128 Kan. 665, 280 Pac. 910, we stated that the power effectively to control a prosecution involves the power to discontinue, if, and when, in the opinion of the prosecutor in charge this should be done.

Before the adoption of our new Criminal Code, K. S. A. 62-808 provided that an information could be amended in matter of substance or form at any time before the defendant pleads, without leave of court. The statute further provided that the information may be amended on the trial as to all matters of form, at the discretion of the court, when the same can be done without prejudice to the rights of the defendant. In *State v. Cashman*, 174 Kan. 272, 255 P. 2d 660, we held that under 62-808, prior to arraignment and

plea, the state had an absolute right to amend in any respect, either in substance or form, without permission of the court. To the same effect is *State v. Bell*, 205 Kan. 380, 469 P. 2d 448.

K. S. A. 62-808 was repealed when the new Kansas Code of Criminal Procedure became effective on July 1, 1970. Included in the new code is K. S. A. 1971 Supp. 22-3201 which contained in subsection (4) the following language:

"K. S. A. 1971 Supp. 22-3201 (4). The court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced."

The state contends that this provision in the new code changed the law and placed the matter wholly within the trial court's judicial discretion in deciding whether or not an amendment to an information by the state should be permitted. The thrust of the state's argument is that the county attorney as prosecutor no longer has the wide discretion to amend the information without leave of court prior to arraignment and plea previously recognized under the decisions of this court.

22-3201 (4) is essentially the same as Rule 7 (*e*) of the Federal Rules of Criminal Procedure. In interpreting Rule 7 (*e*) the federal courts have adopted the position that an information is a charge by a United States Attorney rather than by a grand jury and since the prosecutor is free to make the charge, he should be equally free to change it, and the restrictive rules about amendment of an indictment have no application to an information. Instead the information may be amended in either form or substance. Rule 7 (*e*) permits amendment of an information at any time before verdict or finding provided only that no additional or different offense is charged and that the substantial rights of the defendant are not prejudiced. Leave of court is required in order that the court may protect the defendant against any possibility of prejudice. Wright, Federal Practice and Procedure: Criminal § 128, and cases cited therein.

We do not believe that when the legislature enacted 22-3201 (4) as a part of the new Code of Criminal Procedure it intended to abolish the wide discretion vested in the county attorney to amend an information provided the defendant's rights are in no way prejudiced. The county or district attorney is the chief law enforcement official of his jurisdiction. It is for him to determine

the charges to be filed in a particular case. It is not necessary that he prosecute all crimes at the highest degree available. The American Bar Association Standards for Criminal Justice, The Prosecution Function, emphasize the broad discretion of a prosecutor in the following language under the commentary to § 3.9:

". . . Necessarily crimes are defined in broad terms that encompass situations of greatly differing gravity. Differences in the circumstances under which the crime took place, the motives or pressures activating the offender, mitigating factors of the situation or the offender's age, prior record, general background, his role in the offense, and a host of other particular factors require that the prosecutor view the whole range of possible charges as a set of tools from which he must carefully select the proper instrument to bring the charges warranted by the evidence. In exercising discretion in this way, the prosecutor is not neglecting his public duty or discriminating among offenders. The public interest is best served and even-handed justice best dispensed not by a mechanical application of the 'letter of the law' but by a flexible and individualized application of its norms through the exercise of the trained discretion of the prosecutor as an administrator of justice." (p. 94.)

We hold that when the prosecutor exercises his discretion as to the charges to be filed or as to amendments of the information seeking to reduce the charges to lesser offenses, the trial judge has no right to substitute his judgment for that of the prosecutor absent some compelling reason to protect the rights of the defendant. No such reason is shown in the record before the court in this case. Under the factual circumstances presented here we find that the trial judge erred in refusing to permit the county attorney to amend the information to reduce count two from a felony to a misdemeanor.

A second point raised by the defendant on this appeal is that the trial court abused its discretion in refusing to permit the defendant to withdraw his previous waiver of a jury trial and to grant the defendant a trial by jury. The record shows clearly that the defendant voluntarily waived a jury trial when he appeared before Judge Howard C. Kline on November 15, 1971. In *State v. Blanton*, 203 Kan. 81, 453 P. 2d 30, we held that a waiver of a trial by jury, voluntarily and regularly made by the defendant in a criminal action who knew and understood what he was doing, cannot afterward be withdrawn except in the court's discretion, in the exercise of which the court may consider such matters as the timeliness of the motion to withdraw and whether a delay of trial or inconvenience to the witnesses would result from granting such motion. The various factors which should be considered

are thoroughly discussed in the cases set forth in an annotation in 46 A. L. R. 2d 919.

The difficult question presented to this court is whether or not under the peculiar circumstances of this case the defendant should have been permitted to withdraw his previous waiver and have a trial by jury. Long ago in *Tootle v. Berkley,* 60 Kan. 446, 56 Pac. 755, we held:

"The purpose of the law is that no judge shall hear and determine a case in which he is not wholly free, disinterested, impartial, or independent." (Syl. ¶ 1.)

When circumstances and conditions surrounding litigation are of such nature that they might cast doubt and question as to the fairness or impartiality of any judgment the trial judge may pronounce, such judge, even though he is not conscious of any bias or prejudice, should disqualify himself. It is the duty of this court to maintain and safeguard the right of trial by a fair and impartial tribunal and to be vigilant in seeing to it that every possible semblance of reasonable doubt or suspicion on that question is removed and eliminated to the end that justice may be properly administered. (*In re Estate of Hupp,* 178 Kan. 672, 291 P. 2d 428.) We have concluded that it was an abuse of discretion for the trial court to refuse the defendant his request to withdraw his previous waiver and to deny to the defendant a trial by jury under the totality of circumstances presented here. Here the trial judge in refusing to permit the prosecutor to amend count two from a felony to a misdemeanor stepped down from his role as an impartial trial judge and assumed the role of public prosecutor. We further note that the motion of the defendant to transfer the case to the jury docket was summarily overruled by the trial court without giving the defendant an opportunity to state his reasons for such request and without the court's consideration of any change in circumstances which might justify it. Here the defendant's request for a jury trial was made on the day the case was set but prior to commencement of the trial of the case. There is no showing in the record that the state would have been prejudiced by permitting the defendant to withdraw his previous waiver of trial by jury. In view of the trial court's assumption of the prosecutor's role, the defendant should not have been compelled to stand trial before this particular judge. It was an abuse of discretion to require him to do so.

In his third point the defendant contends that his motion for judgment of acquittal on count two at the close of the state's evidence should have been sustained for the reason that K. S. A. 1971 Supp. 21-3810, aggravated escape from custody, is not applicable until a formal written charge has been filed against the defendant. Prior to the adoption of our criminal code there were a number of statutes covering the subject of escape and jail break. These statutes were repealed and were consolidated under 21-3809, escape from custody, and 21-3810, aggravated escape from custody. The offense of obstructing legal process or official duty was retained as a distinct offense. In order to bring the issue into proper focus we should examine the specific provisions of K. S. A. 1971 Supp. 21-3808, 21-3809 and 21-3810:

"K. S. A. 1971 Supp. 21-3808. Obstructing legal process or official duty. Obstructing legal process or official duty is knowingly and willfully obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, *or in the discharge of any official duty.*

"Obstructing legal process or official duty in a case of felony is a class E felony. Obstructing legal process or official duty in a case of misdemeanor or a civil case is a class A misdemeanor.

"K. S. A. 1971 Supp. 21-3809. Escape from custody. (1) Escape from custody is escaping while held in lawful custody *on a charge* or conviction of misdemeanor.

"(2) As used in this section and the next two (2) succeeding sections, 'escape' means departure from custody without lawful authority or failure to return to custody following temporary leave lawfully granted pursuant to express authorization of law or order of a court.

"Escape from custody is a class A misdemeanor.

"K. S. A. 1971 Supp. 21-3810. Aggravated escape from custody. Aggravated escape from custody is:

"(*a*) Escaping while held in lawful custody *upon a charge* or conviction of felony; or

"(*b*) Escaping while held in custody on a charge or conviction of any crime when such escape is effected or facilitated by the use of violence or the threat of violence against any person.

"Aggravated escape from custody is a class E felony." (Emphasis added.)

It should be noted that under 21-3809 and 21-3810 to be guilty of escape the defendant must have escaped while being held in lawful custody on a charge or conviction. 21-3809 requires the charge to be a misdemeanor. 21-3810 requires that the charge be a felony. When the legislature adopted the Code of Criminal Procedure in 1970, there was included in K. S. A. 22-2202 a definition of the word

"charge" in paragraph (5). The word "charge" was defined as follows:

"(5) 'Charge' means a written statement presented to a court accusing a person of the commission of a crime and includes a complaint, information or indictment."

The defendant takes the position that the statutory definition of "charge" as contained in 22-2202 (5) must be applied in construing K. S. A. 21-3809 and 21-3810, and that to be guilty of escape under those sections a person must have been held under a written charge or statement in the form of a complaint, information or indictment. Here the defendant escaped before there was a written charge filed against him; hence, he contends, he did not violate the escape statute, 21-3810. The record shows that a formal written charge was not filed against him until the day following his arrest. The state urges that this is too narrow a construction of the escape statute; that it is impractical to assume that the language restricts the escape statutes to only those defendants who escape after a written complaint is presented to a court; and that this would put an undue burden on law enforcement. The state relies on *United States v. Barber*, 300 F. Supp. 771, 773 (Del. 1969), which held that the word "charge" as found in the federal escape statute which requires that the defendant be in lawful custody on a charge of felony or misdemeanor at the time of escape, did not require a formal written charge and required only that custody be predicated on probable cause that defendant committed a particular offense.

The question presented is not without difficulty. It seems to us, however, that in view of the specific statutory definition of the word "charge" in 22-2202 (5), the position of the defendant is correct and that the escape statutes, 21-3809 and 21-3810, are applicable only where a defendant escapes from lawful custody while being held on a written charge contained in a complaint, information or indictment. This does not mean that the state is without a remedy where the defendant escapes custody prior to the filing of a formal written complaint. We hold that K. S. A. 1971 Supp. 21-3808, which is quoted above in full and which provides for the offense of obstructing legal process or official duty is broad enough to cover cases where a defendant escapes from custody prior to the filing of a formal written complaint, information or indictment. In *State v. Merrifield*, 180 Kan. 267, 303 P. 2d 155, we held that G. S. 1949, 21-718, pertaining to obstructing legal process or official duty in-

cluded any willful act which obstructs or resists or opposes an officer in the discharge of his official duty and does not necessarily require the employment of direct force or the exercise of direct means. In *Merrifield* we held that the acts of the defendant in going into a house and closing the door and refusing to go with the sheriff upon request, were sufficient to support a conviction of obstructing, resisting or opposing the sheriff in the discharge of his official duty. In the case at bar the defendant by refusing to remain in the custody of the police officer after he was arrested but before a formal written charge was lodged against him, might well have been charged with obstructing official duty under 21-3808. He could not, however, be properly charged under either 21-3809 or 21-3810 since a formal written charge had not been lodged against him at the time he "took off". Here the trial court should have discharged the defendant under count two at the close of the state's evidence.

In view of our holding on the three points just discussed we do not find it necessary to discuss or rule upon the other two points raised on this appeal. The judgment of the trial court is reversed and the case is remanded to the district court with directions to grant the defendant a new trial by jury on count one of the information which charges the defendant with aggravated battery as provided in K. S. A. 1971 Supp. 21-3414.

FROMME, J., concurring in part and dissenting in part. I concur in the first five paragraphs of the syllabus and the corresponding parts of the opinion. The judgment should be reversed and the case remanded for a new trial because the trial judge took over the role of the prosecuting attorney.

However, I respectfully dissent from paragraphs six and seven of the syllabus and the corresponding parts of the opinion. This latter portion of the opinion constitutes judicial legislation in the guise of statutory construction. The opinion erases the crime of "escape from custody" from the Kansas Criminal Code when the escape occurs prior to the filing of a formal written charge even though the accused has been taken into lawful custody on a charge. The opinion further authorizes the use of the wholly distinct and separate crime, "obstructing official duty" (K. S. A. 1972 Supp. 21-3808) as a substitute for the crime just erased by the court. In any event defendant is acquitted on all charges relating to escape

from custody and cannot be tried for "obstructing official duty". Advisory opinions such as this should not be given by the court. The court should not stray from the Statement of Points on appeal presented and briefed by the parties.

The crime of "escape from custody" has generally been considered a distinct crime from that of "obstructing official duty". The "obstructing official duty" statute (21-3808) by its terms requires the *obstructing, resisting* or *opposing* of an officer in the discharge of an official duty. I do not read the *Merrifield* case cited by the majority to hold otherwise. As pointed out in 58 Am. Jur. 2d, Obstructing Justice, § 12, p. 863:

"Broadly speaking, to 'obstruct' is to interpose obstacles or impediments, to hinder, impede, or in any manner intrude or prevent, and this term does not necessarily imply the employment of direct force or the exercise of direct means. It includes any passive, indirect circuitous impediments to the service or execution of process, such as hindering or preventing an officer by not opening a door or removing an obstacle, or by concealing or removing property. If the means used are sufficient to prevent the officer from making an arrest, through fear, terror, or otherwise because of the opposition or resistance, the offense is complete. . . ."

Thus it is readily apparent some sort of force, resistance or threat is essential to complete the crime of obstructing official duty, but this is not necessarily so in the crime of escape. For instance, take the case of a person who is arrested for a serious felony late on a Sunday evening. He is booked and placed in jail pending written charges to be filed the next morning. After the jailer has left the accused saws through the bars which confine him and makes his escape unnoticed. I do not believe he can properly be charged with "obstructing official duty" and under the opinion of the court he cannot be found guilty of "escape from custody". The opinion of the court permits and encourages an accused to engage in a game of "hare and hounds" at the expense of the police officers at any time prior to the filing of a written charge.

The "escape from custody" crimes are defined and proscribed in the Kansas Criminal Code (K. S. A. 1972 Supp. 21-3809 and 21-3810) which contains its own separate definitions section. See 21-3110 which provides: "The following definitions shall apply when the words and phrases defined are used in *this code,* except when a particular context clearly requires a different meaning." (Emphasis supplied.) This statement is then followed by twenty-five definitions, none of them refer to the word "charge". The

Kansas Criminal Code is complete with definitions in Chapter 21 of the statutes.

The majority opinion uses an entirely different code, the Kansas Code of Criminal Procedure, to locate a suitable definition for the word "charge". This latter code is found in Chapter 22 of the statutes. The definition section of that code is 22-2202. In a preface to these definitions it is said: "In interpreting *this code*, such words and phrases as are defined in this article shall be given the meanings indicated by their definitions, unless a particular context clearly requires a different meaning." (K. S. A. 1972 Supp. 22-2201 [1]. Emphasis supplied.) Then follows 22-2201 (2) which provides:

"Words or phrases not defined in this code but which are defined in the Kansas criminal code shall have the meanings given therein except when a particular context clearly requires different meanings."

I believe it is significant that no similar provision was placed in the Kansas Criminal Code (Chapter 21) in connection with its definition section. The absence of such a reference militates against incorporating the definitions in the procedural code into the criminal code.

There is yet another reason why the Kansas Criminal Code (Chapter 21) does not and could not contain a provision incorporating the definitions in the procedural code by reference.

Although these two separate codes became effective July 1, 1970, the Kansas Criminal Code (Chapter 21) was passed in the 1969 session of the legislature (ch. 180, L. 1969) and the Kansas Code of Criminal Procedure (Chapter 22) was passed in the 1970 session of the Legislature (ch. 129, L. 1970). The code passed in 1969 could not very well incorporate by reference definitions to be adopted at some time in the future.

In summary the definitions of the crimes of escape from custody contained in 21-3809 and 21-3810 do not mention a written charge and I would not require that the charge be written. The judgment should be reversed and the case remanded for a new trial on both the charge of aggravated battery and escape from custody.

KAUL, J., joins in the foregoing concurrence and dissent.