No. 44,557

STATE OF KANSAS, *Appellee,* v. ROBERT A. COUTCHER, *Appellant.*

(424 P. 2d 865)

Opinion filed March 4, 1967.

*William L. Rees,* of Topeka, argued the cause, and *Hall Smith* and *Robert L. Reed,* also of Topeka, were with him on the brief for the appellant.

*Robert D. Hecht,* County Attorney, argued the cause, and *Robert C. Londerholm,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a criminal action in which Robert A. Coutcher (defendant-appellant) was charged with the illegal possession and sale of marijuana in violation of K. S. A. 65-2502. He was tried to a jury which found him guilty, and the trial court sentenced him to serve a term of eighteen years in the Kansas State Penitentiary pursuant to the provisions of K. S. A. 65-2519a and 21-107a, on the ground the appellant had been twice previously convicted of felonies. Appeal has been duly perfected.

The only questions raised on appeal relate to the sentence given the appellant.

The record is barren of any evidence pertaining to the offense, other than the information, a portion of the journal entry, and evidence of prior convictions. We must therefore rely upon the statement of facts made by the appellant before discussing and giving consideration to his respective contentions of error.

The appellant was charged along with a codefendant, Raymond Sanchez, in the district court of Shawnee County, Kansas, with one count of illegal possession and sale of marijuana.

The trial disclosed that the offense occurred on the 11th day of December, 1964, after two and one-half months of repeated, continuous and admitted solicitations by a special investigator for the Shawnee County sheriff and agents of the Federal Bureau of Narcotics, when the appellant in company with Sanchez delivered a few ounces of marijuana to persons who were in fact federal agents.

The identity of the officers and investigators was not disclosed at the time and no arrest was made until the 8th day of March, 1965. In the interim the officers and agents made repeated attempts to get the appellant to procure additional marijuana, but were unsuccessful. On the 8th day of March, 1965, the appellant and Sanchez were arrested and both were bound over for trial to the district court on the 22nd day of April, 1965.

On the 19th day of October, 1965, Sanchez was granted a severance and allowed to plead guilty on an amended "misdemeanor" charge and was placed on probation. The appellant, through counsel, offered to make a similar disposition of his case, by pleading guilty to a misdemeanor, but his offer was rejected by the county attorney. The appellant was convicted on the felony charge in a trial which commenced on the 6th day of December, 1965, and concluded on the 8th day of December, 1965.

On the 11th day of January, 1966, the appellant was sentenced to

eighteen years at hard labor in the Kansas State Penitentiary at Lansing, Kansas, pursuant to K. S. A. 65-2519a and 21-107a, on the ground that he had two prior felony convictions.

At the time the offense in the instant case was committed, the appellant was just over twenty years of age and Sanchez was nearly twenty-one years of age. Sanchez had previously been charged in the district court of Shawnee County, Kansas, with burglary and larceny of a liquor store in September, 1962, when he was nearly nineteen years of age. In that case Sanchez, on the 23rd day of January, 1963, pleaded guilty to an amended charge of grand larceny and was placed on probation.

The two prior felony convictions of the appellant occurred in the year 1961 when he was sixteen years of age. In April, 1961, the appellant was charged with burglary and larceny in the district court of Shawnee County, and while at liberty on bond prior to trial committed the offense of first degree arson in June, 1961. He was charged with the arson in a separate case in the district court of Shawnee County, Kansas. On the 6th day of October, 1961, the appellant pleaded guilty to the charges in both cases and was sentenced to the Kansas State Industrial Reformatory at Hutchinson, Kansas, where he was committed and served time. (The sentence was identical in each case and made to run concurrently with the sentence in the other case.)

The sentencing of the appellant in the instant case did not occur until the 11th day of January, 1966, after the effective date of K. S. A. 1965 Supp. 38-802, which raised the jurisdictional age limit for juveniles to eighteen years.

The appellant first contends that when the legislature raised the jurisdictional age limit for juveniles to eighteen years, it did not intend that past violations of law which were felonies when committed, but which would now constitute only acts of delinquency, should be used as a basis for enhancing the penalty under the habitual criminal act.

The thrust of the appellant's argument on this point is that the habitual criminal act, which provides for enhanced penalty in criminal cases where there have been prior felony convictions, is to be regarded like all criminal statutes, and must be strictly construed. (Citing, annotations in 58 A. L. R. 20 and 82 A. L. R. 345; *State v. Durham,* 177 Or. 574, 164 P. 2d 448, 162 A. L. R. 422 [1945]; and 25 Am. Jur., Habitual Criminals, § 2, p. 260.) He then argues the

conviction of a juvenile does not constitute a felony and will not support an increased sentence under 21-107a, *supra.* (Citing, *State v. Fountaine*, 196 Kan. 638, 414 P. 2d 75; and *McCarty v. Hudspeth*, 166 Kan. 476, 201 P. 2d 658.)

The appellant concedes no case has been found in which the primary question he presents was involved, but contends the rule of strict construction is to be given real effect—that it is sufficient to prevent the application of the habitual criminal statute in situations where the statutes are ambiguous or the legislative intent is uncertain.

As we construe the appellant's argument, he contends the act amending the juvenile code, to increase the age of juveniles to eighteen years, is ambiguous or uncertain as to the legislative intent, and by giving a strict construction to the habitual criminal act the juvenile code, as amended, is to be given retroactive effect, thereby transforming the prior felony convictions of the appellant to mere acts of delinquency because the appellant was under eighteen years of age when the acts were committed.

Upon analyzing the appellant's argument we find that it has no merit. The authorities upon which he relies cannot be regarded as giving support to his ultimate conclusion.

It may be noted the appellant's argument ignores K. S. A. 1965 Supp. 38-808(*b*), which provides that a child sixteen years of age or over but less than eighteen may be referred by the juvenile court to the district court upon a finding that the child would not be amenable to juvenile court proceedings. Therefore, even under the appellant's theory he cannot rule out the possibility that he might have been prosecuted as an adult had the juvenile court waived its jurisdiction. (See, *State, ex rel., v. Owens*, 197 Kan. 212, 416 P. 2d 259.)

Our decision on the point in question, however, is controlled by *State v. Augustine*, 197 Kan. 207, 416 P. 2d 281. There the question was whether the provisions of chapter 278 of the Laws of 1965 (now appearing as K. S. A. 1965 Supp. 38-802, 38-806, 38-808, 38-815, 38-816, 38-826 and 38-836) had retroactive application to cases pending on January 1, 1966, the effective date of the act. There the court held:

"A legislative enactment which enlarges the jurisdictional age limits of the juvenile court to include sixteen- and seventeen-year-old male persons constitutes a change in the substantive law, and will not be construed as having

retroactive application to cases pending on the effective date of the act in the absence of language disclosing a contrary legislative intent." (Syl. ¶ 2.)

If the change made in the juvenile code constitutes a change in the substantive law, as above indicated, and will not be construed as having retroactive application to cases *pending* on the effective date of the act in the absence of language disclosing a contrary legislative intent, *a fortiori*, it cannot have retroactive application to cases that are no longer pending but which have been determined.

Applying the foregoing rule to the case at bar makes it readily apparent the present juvenile code does not have retroactive application to offenses committed prior to January 1, 1966, and the character of the crime, or conviction, is determined as of the time it occurs. In the absence of language disclosing a contrary legislative intent, and we find none, the force and effect of the appellant's prior felony convictions has not been altered by the juvenile code, as amended on January 1, 1966.

For his second point the appellant contends he was improperly sentenced to a term of eighteen years under the habitual criminal act, 21-107a, *supra,* because:

"(*a*) The act deprives the Court of all discretion in sentencing and delegates what should be judicial discretion to the prosecutor.

"(*b*) The Appellant has been denied equal protection of law in that his accomplice and codefendant, and the immediate supplier of the illegal drug, was granted misdemeanor treatment and probation for the same offense as that for which Appellant is now sentenced to serve 18 years at hard labor.

"(*c*) The sentence imposes a cruel and unusual punishment upon Appellant as compared with his codefendant Sanchez, in violation of the 8th Amendment to the Constitution of the United States and Sec. 9 of the Kansas Bill of Rights."

Counsel for the appellant concede the constitutionality of this and similar acts has generally been upheld as against complaints of improper deprivation and delegation of judicial discretion, and denial of equal protection of the laws. The appellant urges the court to re-examine its position on these points, but presents no new authorities in support.

These points (*a* and *b* above) were thoroughly considered in *Gladen v. State,* 196 Kan. 586, 413 P. 2d 124, where the arguments advanced by the appellant in this brief, and others not advanced, were fully considered by this court. Further discussion will not be undertaken. We adhere to the decision in *Gladen* and the cases

cited therein. The law as there announced is contained in the first two paragraphs of the syllabus as follows:

"The exercise of reasonable discretion in the application of a law to those for the same class does not necessarily or generally render the law unconstitutional as depriving one of equal protection of the law. (Following *In re Skinner*, 136 Kan. 879, 18 P. 2d 154.)

"The exercise of discretion by a county attorney in seeking to invoke the provisions of the habitual criminal act (K. S. A. 21-107a) without a showing of discrimination by reason of willful, arbitrary, designed, deliberate, intentional or concerted action, does not deprive one of due process of equal protection of the law guaranteed by the fourteenth amendment to the United States Constitution in a case where an enhanced penalty was imposed under the act." (Syl. ¶¶ 1, 2.)

As to points (a) and (b) above, the appellant's attack in his brief is confined to the constitutionality of the habitual criminal statute. Even if it be assumed the statements concerning Sanchez were designed to show unequal treatment by the prosecuting officials, it is insufficient, in the light of *Gladen* and the decisions cited therein to render the statute as administered unconstitutional. There is a presumption that a public official will act fairly, reasonably and impartially in the performance of the duties of his office. (*Lyerla v. Lyerla*, 195 Kan. 259, 403 P. 2d 989; *Sutherland v. Ferguson*, 194 Kan. 35, 397 P. 2d 335; *State v. Emory*, 193 Kan. 52, 391 P. 2d 1013, cert. den. 379 U. S. 906, 13 L. Ed. 2d 179, 85 S. Ct. 200; and *Gladen v. State*, supra.)

There is nothing in the record which would support a charge of discrimination by reason of willful, arbitrary, designed, deliberate, intentional or concerted action by the prosecuting officials.

As applied to the facts in this case, can it be said the sentence of eighteen years to the state penitentiary imposes a cruel and unusual punishment upon the appellant?

While the prohibition of the Eighth Amendment to the United States Constitution has generally been considered to be directed against physical cruelty and torture, there is authority to the effect that it also may be invoked against excessively and disproportionately long prison sentences.

The appellant relies upon this rule established years ago by the United States Supreme Court in *Weems v. United States*, 217 U. S. 349, 54 L. Ed. 793, 30 S. Ct. 544 (1910). In that opinion the court said:

"What constitutes a cruel and unusual punishment has not been exactly decided. It has been said that ordinarily the terms imply something inhuman and barbarous, torture and the like. *McDonald v. Commonwealth,* 173 Massachusetts, 322. The court, however, in that case conceded the possibility 'that imprisonment in the State prison for a long term of years might be so disproportionate to the offense as to constitute a cruel and unusual punishment.' . . ." (p. 368.)

Here the appellant contends Sanchez, his codefendant with a prior felony conviction, was the immediate source of the contraband material (this is controverted by counsel for the state) and given merely a twelve-month jail sentence without ever having been required to serve a day because he was paroled. The appellant argues a more striking example of excessive and disproportionate punishment could hardly be imagined.

The state in its counter abstract sets forth evidence showing the appellant's prior convictions, including the appellant's previous criminal history. This was presented to the trial court at the time of sentencing.

In addition to the two prior felony convictions, the record of the court of Topeka disclosed the appellant was convicted on the 22nd day of August, 1963, of an assault with a deadly weapon, that being a revolver, for which he was sentenced to the county jail for thirty days and paroled. On the 22nd day of April, 1965, the parole was revoked.

The records of the police court of the city of Topeka disclosed that the appellant on the 30th day of December, 1965, was involved in a hit and run automobile accident resulting in an injury. Further, that on the 20th day of November, 1965, the appellant pawned a .32 caliber revolver at a pawn shop.

No objection was made by the appellant or his counsel to these disclosures by the county attorney concerning the appellant's previous criminal history.

At the time of sentencing, counsel for the appellant apparently requested that the appellant be sent to the reception and diagnostic center for a psychiatric evaluation. Upon making this request the county attorney argued that the appellant had been given the benefit of the assistance of every conceivable facility which was available in the state of Kansas. He disclosed that the appellant was referred to the reception and diagnostic center for a psychiatric evaluation while on parole from the industrial reformatory at

Hutchinson, Kansas, and the contents of such report were made available to the trial court.

The trial court after pronouncing sentence upon the appellant in the instant case said:

". . . It will be the further judgment of this Court that there is no point in referring Mr. Coutcher to the Diagnostic Center as we already have the full contents of their report. This Court is basing this sentence, Mr. Coutcher, strictly upon the basis of your record and not on the record of anybody else. . . ."

The habitual criminal statute (21-107a, *supra*) is aimed at habitual criminals and simply imposes a heavier penalty upon the conviction for a second or third felony conviction. The punishment *is for the new crime only*, but the punishment is more severe if he is a habitual criminal. (*Carlesi v. New York*, 233 U. S. 51, 58 L. Ed. 843, 34 S. Ct. 576 [1914].)

The validity of such punishment under an habitual criminal act has long been recognized and the theory is not repugnant to the Federal Constitution. (*Johnson v. State of Kansas*, 284 F. 2d 344 [10th Cir. 1960]; *Graham v. West Virginia*, 224 U. S. 616, 56 L. Ed. 917, 32 S. Ct. 583 [1912]; and see, *Chandler v. Fretag*, 348 U. S. 3, 99 L. Ed. 4, 75 S. Ct. 1 [1954].)

Upon the record here presented it cannot be said the trial court in the instant case imposed a sentence which was so disproportionate to the offense as to constitute cruel and unusual punishment. No showing has been made that the appellant's substantial rights were in any way affected by the sentence imposed in the instant case.

The judgment of the lower court is affirmed.