No. 45,558

ONEAL SCOGGINS, *Appellant*, v. STATE OF KANSAS, *Appellee*.

(454 P. 2d 550)

Opinion filed May 17, 1969.

*Joel A. Sterrett,* of Topeka, argued the cause and was on the brief for the appellant.

*Gene Olander,* County Attorney, argued the cause, and *Kent Frizzell,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: In 1966, Oneal Scoggins, the petitioner and appellant herein, was convicted of first degree robbery and sentenced to a term of twenty to forty-two years as an habitual criminal. He appealed that conviction to this court where the same was upheld in *State v. Scoggins,* 199 Kan. 108, 427 P. 2d 603.

Subsequently, Mr. Scoggins filed this action under K. S. A. 60-1507, challenging the validity of both the conviction and sentence.

Counsel was appointed to represent him in this action and an evidentiary hearing was held at which both Scoggins and his counsel were present and Scoggins testified. Following the trial, the district court entered findings of fact and denied relief. Hence this appeal.

The petitioner first complains that one of the state's witnesses gave false testimony at his trial. This complaint is utterly without merit. There is no showing whatever of false or perjured testimony. The complaint boils down to this: there was some variance between the statements of two officers as to how much money Scoggins had in his possession when he was arrested. The conflict, which was not of major import, went only to credibility and forms no basis for this attack on the judgment.

Scoggins next accuses his trial counsel of ineffective representation in failing to expose on cross-examination what he denominates as false testimony, but which more accurately may be characterized as a conflict or variance in the evidence. This contention is groundless. This court has but recently said, in effect, no accused can be guaranteed a lawyer who will try a case perfectly, if indeed such a creature exists. (*State v. Wright*, 203 Kan. 54, 452 P. 2d 1.) Moreover, the record does not disclose the extent of the cross-examination undertaken by defense counsel, and we have no way to gauge its quantity, quality or effectiveness.

Because there was some uncertainty as to the exact sum of money taken from the victim of the robbery, the defendant erroneously concludes, for his third point, that the charge of robbery was not established. The value of the property obtained from one who is robbed is not a material element of first degree robbery as such is defined in K. S. A. 21-527. We have held more than once that value is wholly immaterial so long as the thing taken is property. (*State v. Howard*, 19 Kan. 507; *In re Max Wheatley, Petitioner*, 114 Kan. 747, 748, 220 Pac. 213; *State v. Tucker*, 115 Kan. 203, 204, 222 Pac. 96.)

For his fourth point the petitioner asserts he was denied equal protection of the law by reason of the discriminatory application of the Habitual Criminal Act, K. S. A. 21-107a, (hereafter called Act). To support this contention the petitioner introduced at his 60-1507 hearing journal entries showing sentences imposed against twelve other felons in the Shawnee County District Court during the general period in which he, himself, was sentenced.

Without going into detail we may say the journal entries reflect that the Act was invoked against two defendants who pleaded guilty as well as against six defendants who stood trial. Also reflected are sentences imposed against four defendants upon their pleas of guilty where the Act was not invoked even though the county attorney, by his own stipulation, possessed knowledge of prior convictions. From this bald evidence we are asked to hold that an invidious pattern of discrimination was established to the substantial prejudice of Mr. Scoggins' constitutional rights under the fourteenth amendment.

The petitioner's argument is not new to this court, although we find the present record somewhat better documented than some which have come before us in the past. The rule followed by this court in cases of this character is well expressed in *Gladen v. State,* 196 Kan. 586, 413 P. 2d 124, where we held:

"The exercise of discretion by a county attorney in seeking to invoke the provisions of the habitual criminal act (K. S. A. 21-107a) without a showing of discrimination by reason of willful, arbitrary, designed, deliberate, intentional or concerted action, does not deprive one of due process or equal protection of the law guaranteed by the fourteenth amendment to the United States Constitution in a case where an enhanced penalty was imposed under the act." (Syl. ¶ 2.)

In a subsequent case, *Addington v. State,* 198 Kan. 228, 424 P. 2d 871, we pointed out the responsibility which rests upon a prosecuting attorney to act in good conscience and to observe elementary principles of justice and fair play when invoking the Act and we concluded by saying:

". . . If the county attorney acts corruptly, willfully and in bad faith in invoking the Act, the sentence imposed thereunder may be vacated pursuant to K. S. A. 60-1507, but the burden of proof rests upon the movant. (Citing cases.)" (p. 235.)

See, also, *State v. Coutcher,* 198 Kan. 282, 424 P. 2d 865; *State v. McCarty,* 199 Kan. 116, 427 P. 2d 616; *State v. Eaton,* 199 Kan. 610, 433 P. 2d 347; *State v. Young,* 200 Kan. 20, 434 P. 2d 820.

When we apply our established rule to the facts disclosed in this record, we cannot say that an arbitrary and capricious pattern of discrimination has been established to the prejudice of this petitioner. While it is true the journal entries offered by petitioner reflect the imposition of higher penalties under the Act where defendants have pleaded guilty than where they have pleaded otherwise, the cases cited are far too few in number and too sketchy in

detail to establish what can be said in law to constitute a deliberate pattern of arbitrary or capricious discrimination.

Among other factors which may be noted in this connection is the entire absence of any showing with respect to the character of the prior convictions relied on in each case, that is, whether or not the former crimes were of an aggravated, violent or vicious nature. Neither does the record reflect what were the ages or dispositions of the several miscreants, or what misdemeanors and minor crimes they may also have committed, or what their pre-sentence reports may have revealed. These are all factors which well might influence a trial court in pronouncing sentence and might influence a county attorney, as well, in deciding on his course of action.

While the county attorney in some cases saw fit not to invoke the Act against defendants who pleaded guilty, even though aware of prior records, it is clear that the Act was invoked in other cases where guilty pleas were entered. Moreover, the trial court, which found that petitioner had introduced no evidence that the Act was used to discourage defendants from exercising their rights to trial by jury, stated it had personal knowledge that defendants who do plead guilty are sentenced under the Act as well as those who elect to stand trial.

After a thorough review of the record, we agree with the trial court that the petitioner failed to sustain his burden of proving arbitrary and invidious discrimination on the part of either the county attorney or the sentencing judge. The following passage from *Oyler v. Boles,* 368 U. S. 448, 7 L. Ed. 2d 446, 82 S. Ct. 501, we believe is pertinent to the circumstances of this case:

"Moreover, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged. . . ." (p. 456.)

We have not overlooked the case of *Patton v. State of North Carolina,* 256 F. Supp. 225, cited by the petitioner, but found it not factually in point.

Finally, the petitioner avers that he was denied equal protection of the law because the jury which convicted him contained no negroes. This bald assertion is found in petitioner's brief alone, no evidence to such effect being shown in the record. Being both unsworn and completely uncorroborated, the defendant's statement is

wholly insufficient to establish that none of the jurors before whom he was tried were negroes. (Rules of the Supreme Court, Rule No. 121 (g), 201 Kan. xxxiii; *Huston v. State*, 195 Kan. 140, 403 P. 2d 122; *Lieser v. State*, 199 Kan. 503, 430 P. 2d 243; *Lloyd v. State*, 197 Kan. 389, 416 P. 2d 766.)

Furthermore, the defendant does not even suggest, nor did he offer evidence to indicate, that negroes are purposely excluded from grand and petit jury panels drawn in Shawnee County. Thus no such prima facie case of systematic exclusion appears in this record as was made out in *Coleman v. Alabama*, 389 U. S. 22, 19 L. Ed. 2d 22, 88 S. Ct. 2. The law in this regard is clearly delineated in *State v. Clift*, 202 Kan. 512, 449 P. 2d 1006, where this court held:

"Although the law requires that a jury panel be truly representative of a cross-section of the community in which a defendant is to be tried, a Negro defendant in a criminal case is not constitutionally entitled to be tried by a jury on which there is a member, or members, of his race, and he is entitled to relief only upon proof presented by him which discloses a purposeful discrimination to exclude members of a class from the jury panel." (Syl. ¶ 4.)

We find no error committed in this case and the judgment of the court below is affirmed.