No. 45,626

State of Kansas, *Appellee*, v. John Boyd, *Appellant*.

(481 P. 2d 1015)

Opinion filed March 6, 1971.

*Charles S. Scott*, of Topeka, argued the cause and was on the brief for the appellant.

*Gene M. Olander*, County Attorney, argued the cause, and *Kent Frizzell*, Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

Fontron, J.: The defendant, John Boyd, was convicted of first degree robbery and, as a three-time offender, was sentenced to

serve a term of 45 years, pursuant to the Habitual Criminal Act. (K. S. A. 21-107a.) He has appealed the conviction.

Mr. Boyd, who will be referred to herein either by name or as the defendant, was originally tried jointly with his co-defendant, Jack Lloyd McCarty, and both defendants were found guilty of the robbery which is the subject of this appeal. This court upheld the convictions against both McCarty and Boyd in *State v. McCarty,* 199 Kan. 116, 427 P. 2d 616.

On June 10, 1968, the United States Supreme Court granted certiorari with respect to Boyd, vacated the judgment as to him and remanded his case for further proceedings in the light of *Bruton v. United States,* 391 U. S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620. At the same time McCarty's petition for a writ of certiorari was denied. (*McCarty et al. v. Kansas,* 392 U. S. 308, 20 L. Ed. 2d 1115, 88 S. Ct. 2065.) On remand of his case, Boyd was tried a second time and, as we have already related, was convicted of robbery a second time. Hence this appeal.

A number of points are raised and require comment. First, the defendant maintains the trial court erred in refusing to instruct the jury as to the offense of accessory after the fact, as defined by K. S. A. 21-106. This presents no new question. Similar arguments have been made before this court on numerous occasions and have consistently been rejected. The issue was central to our decision in *State v. Phillips,* 136 Kan. 407, 15 P. 2d 408, where the defendant was charged with and convicted of robbery. In sustaining the conviction it was held:

"Where the information charges robbery it does not include being an accessory after the fact, which is a separate and distinct offense, and the court properly refused to give an instruction on an offense not included in the information. (Syl. ¶ 2.)

See, also, *State v. McAlister,* 139 Kan. 672, 33 P. 2d 314, where the defendant was charged with stealing an automobile, and *State v. Turner,* 193 Kan. 189, 392 P. 2d 863, where the charge was first degree murder.

In the recent case of *State v. Jolly,* 196 Kan. 56, 410 P. 2d 267, the offense alleged was robbery in the first degree. On appeal from conviction, the defendant contended the jury should have been instructed with respect to the offense of accessory after the fact, as defined in 21-106. In rejecting that contention we again said that such an offense was not included within the charge of robbery.

A second claim of error pertains to the admission of certain physical evidence which had been obtained in a search of some living quarters above a Topeka tavern. To put this claim in proper perspective we should point out that shortly after the holdup a car driven by Boyd, and with McCarty crouching in the back seat, and which at the time was being pursued by police officers, drove up to and stopped at the tavern. McCarty jumped out of the car and, being fleet of foot, dashed into the building and rushed upstairs, while Boyd was apprehended behind the steering wheel of the car.

The upstairs lodgings were searched, after McCarty had given his written consent, and a trench coat and hat were found, described as having been worn by McCarty during the robbery, as well as a sawed-off shotgun and shells. The shotgun corresponded to the weapon carried by McCarty at the time of the robbery. All these items were admitted in evidence over Boyd's objection.

Boyd's objection is two pronged. In the first place, he contends that McCarty's confession having been held inadmissible against Boyd in the joint trial, the articles found in the search and attributable to McCarty are likewise inadmissible against him in the instant case.

The logic of this approach entirely escapes us. As to Boyd, McCarty's confession, in which he implicated his co-defendant, was hearsay and hence inadmissible at the joint trial to prove Boyd's guilt, and so prejudicial was the hearsay evidence, said the court in *Bruton*, that its damaging impact could not have been cured by instructing the jury to disregard it as to Boyd. However, it does not follow from the rule laid down in *Bruton* that the physical evidence found in Boyd's lodging was likewise inadmissible. Such an inference would constitute a classic example of *non sequitur*. The conclusion at which Boyd would have us arrive, in following his attempted syllogism, would be fallacious in the extreme because his minor premise is untrue. Physical evidence clearly is not hearsay evidence. K. S. A. 60-460 defines hearsay evidence as "Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated." Physical evidence is not encompassed within this definition and the defendant's tortured attempt to equate the same with hearsay must fail.

Secondly, the defendant asserts that the search based on Mc-

Carty's written consent was invalid and hence the evidence obtained therefrom was inadmissible. In support of this theory, Boyd first says that McCarty's consent was not voluntary. We believe a sufficient answer to this argument is that McCarty has not claimed that his consent was involuntary, although he might have advanced such a contention, if it were the fact, when the case against him was tried. (*State v. McCarty*, supra.)

Boyd further contends that his own consent was essential to a valid search, claiming that he and McCarty did not occupy the lodgings jointly but that he, himself, was solely in control. In a hearing held by the court outside the jury's presence, Boyd testified that he and McCarty occupied living quarters at the address in question; that he, Boyd, paid the rent and had control of the entire building; that he considered the place McCarty's as well as his own *to a certain extent;* that McCarty slept there and could bring his friends there, but that he thought his own right was different *as he paid the rent.*

To support his assertion of sole proprietorship, Boyd introduced as an exhibit a so-called rent receipt written on tablet paper, purportedly signed by Walter Bugg, the landlord. The authenticity of this piece of paper was severely tarnished by expert testimony that the signature on the alleged receipt was not that of Mr. Bugg. The record discloses that the trial court gave no weight to the exhibit and concluded the search was validly made on McCarty's consent.

We believe the court's conclusion stands on solid ground. There was ample evidence to support an inference of joint occupancy. The rule is that where two or more persons jointly occupy living quarters, the consent of one of them is sufficient to form the basis for a valid search. (*State v. McCarty*, supra, and cases cited therein; *People v. Terry*, 57 C. 2d 538, 21 Cal. Rptr. 185, 370 P. 2d 985.)

On the morning after the jury had retired to deliberate, the trial court submitted a so-called *Allen* type instruction, patterned after the instruction which was upheld in *Allen v. United States*, 164 U. S. 492, 41 L. Ed. 528, 17 S. Ct. 154. We shall not quote the instruction here, for it follows, for the most part, the instruction set out verbatim in *State v. Oswald*, 197 Kan. 251, 417 P. 2d 261, where the curious reader may easily find it.

More than once in recent years this court has criticized the giving

of coercive charges of this character after the jury has received the case for its determination. (*State v. Oswald,* supra, *Bush v. State,* 203 Kan. 494, 454 P. 2d 429; *State v. Basker,* 198 Kan. 242, 424 P. 2d 535; *State v. Ingram,* 198 Kan. 517, 426 P. 2d 98.) We reiterate our warning: The practice of submitting a forcing type instruction after the jury has reported its failure to agree on a verdict is not commended and may well lead to prejudicial error. (See *State v. Earsery,* 199 Kan. 208, 428 P. 2d 794.) If such an instruction is to be given, trial courts would be well advised to submit the same before the jury retires, not afterward.

It is quite unnecessary in the present case, however, to delve into the details which surrounded the giving of the instant instruction in order to determine whether it resulted in prejudicial error. We need only point out that the record clearly reveals the defendant expressed satisfaction with the instruction, waived any objections thereto and consented to its being given. Under such circumstances he cannot claim prejudicial error at this stage of the case.

Boyd next contends the sentence pronounced under the Habitual Criminal Act was void. First, he says that insufficient notice was given. This contention is without merit. Notice of the state's intention to invoke the Act was given 21 days before sentence was pronounced. No reason is suggested why that time was insufficient for defendant to prepare his defense, nor has prejudice been shown in that regard. (*State v. Peterson,* 198 Kan. 239, 424 P. 2d 552; *State v. Cruitt,* 200 Kan. 372, 436 P. 2d 870.)

It is next urged that proof of prior convictions may not be made by means of certified copies of penal records. This question was determined adversely to Boyd's contention in *State v. Hall,* 187 Kan. 323, 356 P. 2d 678.

In addition, the defendant argues he was entitled to eight rather than six peremptory jury challenges. The basis for this assertion lies in Boyd's interpretation of K. S. A. 62-1402 *Second,* which provides that where an offense is punishable by imprisonment for not less than a number of years and no limit is set for the duration of the imprisonment, an accused is entitled to eight peremptory challenges.

The defendant's theory is that since a third-time offender is subject to a sentence of not less than 15 years with no maximum limitation, he comes within the purview of the statute and should be allowed eight challenges. This contention was laid at rest in

*State v. Butler,* 131 Kan. 680, 293 Pac. 756, wherein we held that the penalty for the offense charged furnishes the sole guide for determining the number of peremptory challenges.

Finally, the defendant says the verdict was contrary to the evidence. This is completely without merit. We shall not undertake to summarize the evidence here. It is available for all to see in *State v. McCarty,* supra.

We find no prejudicial error in this case and the conviction is affirmed.