No. 47,332

STATE OF KANSAS, *Appellee,* v. MARCEL TROY, *Appellant.*

(524 P. 2d 1121)

Opinion filed July 17, 1974.

*Max M. Hinkle,* of Abilene, argued the cause and was on the brief for the appellant.

*John H. Taylor,* county attorney, argued the cause, and *Vern Miller,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The defendant, Marcell Troy, was convicted of second degree burglary and he has appealed.

At about 2:51 a. m., January 26, 1970, a burglar alarm was set off at the Junction City Bottling Company, and a police officer was dispatched to that location. Observing nothing wrong on the outside of the building, the officer contacted the manager who came to the plant and unlocked the front door, and the two men proceeded to undertake a search of the premises. Mr. Troy was discovered in the manager's office the floor of which was littered with debris, such as wood, plasterboard and the like. Part of one wall had been torn away exposing the back end of the safe and a section of the outer covering of the safe had been pried loose. A dirt pick, two small pinch bars, a pair of tin snips and a ball-peen hammer were on the floor. It was later discovered that entrance had been made through a door on the west side through one of the panes of glass.

Mr. Troy was frisked for weapons at the scene, after which he was handcuffed and taken to the police station. On the way to the station he was advised of his rights. Thence he was taken to the sheriff's office where he was booked into jail and searched. The search disclosed a banking sack in one of his pockets, plus a screwdriver and a chisel. These three items were admitted in evidence over the defendant's objection that the search was illegal, having been made without a warrant.

Testifying on his own behalf, the defendant told an interesting story. He stated that he had walked to the apartment of some friends in the west part of town that night but they were not at home. On his way back home his route took him by the bottling works about 3 a. m. He observed two police cars in the alley be-

hind the plant and one in front of the building. As he walked by the cars in the alley a policeman jumped out, grabbed him and forced him into the building where he fell down in the debris. He was thereupon searched and handcuffed. Thence, said he, he was taken to city jail where he was again searched and then on to county jail where a third search was conducted. He denied that the money sack, screwdriver and chisel which were introduced in evidence had been found on his person.

Four points have been raised on appeal. First, the defendant argues that the three exhibits were inadmissible as being the fruits of an illegal search because the search at the county jail was not contemporaneous with nor in the vicinity of the arrest.

The law appears settled that where a lawful custodial arrest has been made no warrant is required to conduct a valid search of the arrested person. In *United States v. Robinson,* 414 U. S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467, the court gave careful consideration to this point and held that "in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment but is also a 'reasonable' search under that Amendment." (p. 235.)

This court, also, has spoken on the subject. In *State v. Jerrel,* 200 Kan. 415, 436 P. 2d 973, the defendant and two companions were confronted on the street, were placed under arrest and were escorted to the police station. At the station Mr. Jerrel was searched and a metal cutter or tin snip was found on his person. Jerrel maintained that the cutter taken from his coat was not admissible in evidence because it was obtained without a necessary search warrant. In answer to this contention we said:

"The metal cutter was obtained from the defendant's person at the police station after the three men were arrested upon probable cause for possessing burglary tools. We believe the officers were legally justified in acting as they did. The search was incident to a lawful arrest. Facts and circumstances known to the officers warranted the belief by a prudent man that a felony was committed at or before the arrest. The action of the officers in taking the metal cutter was proper under the rules heretofore set forth in *State v. Hunt,* 198 Kan. 222, 424 P. 2d 571; *State v. Brown,* 198 Kan. 473, 426 P. 2d 129; *State v. Hart,* supra, and the metal cutter was properly admitted in evidence." (p. 419.)

The second alleged error was the admission by the court of rebuttal testimony given by the sheriff and by a city police officer. The former testified with respect to the search made at the county jail and he stated on the stand that he had observed the items

taken from Mr. Troy. The police officer testified that the door through which the defendant said he had been dragged was not unlocked until after Troy had been found in the building. The rule concerning the admission of rebuttal testimony is set forth in *State v. Blocker*, 211 Kan. 185, 505 P. 2d 1099, in this language:

"The trial court may, in its discretion, permit the state to introduce evidence on rebuttal which would have been admissible in the state's case in chief and its ruling in such regard will not be cause for reversal unless it appears that its discretion has been abused to the defendant's prejudice." (Syl. ¶ 2.)

In view of the testimony given by Mr. Troy in his defense (1) denying that the exhibits had been taken from his person at the county jail and (2) relating that he had been forced into the building by police officers, we cannot say that the trial court abused its discretion in admitting the rebuttal evidence.

Defendant's third point concerns the giving of a so-called "Allen type" or coercive instruction under the following circumstances. At approximately 2:40 p. m. the jury retired to deliberate. It returned at 3:05 to have certain testimony read, and retired again at 3:50. It was 5:13 when the jury reported it was unable to reach a decision. The court thereupon gave the following instruction, closely patterned after PIK Civil § 10:20:

"The case has been exhaustively and carefully tried by both sides and has been submitted to you for decision and verdict. Although under the law, a verdict must be unanimous, and should be based upon honest judgment, not mere acquiescence for the sake of expediency, it is still necessary that you examine the matters submitted to you with the proper regard for and deference to the opinion of each other. A proper regard for the judgment of each other should help you greatly in forming your own judgment. There is no reason to think that a jury better qualified than you would ever be chosen to try this case. Therefore, each of you should listen to the arguments of the others with an openmindedness characteristic of a disposition to be convinced by them, and if you differ in your views of the evidence, you should all be led by such differences of opinion to scrutinize the evidence more closely and to re-examine more carefully the grounds of your opinion. You should, after all, decide the issues of fact which have been submitted to you. In conferring, you should lay aside all mere pride of opinion, and you should bear in mind that the jury room is no place for espousing and maintaining in a spirit of controversy either side of a particular cause. The aim to be kept in view is the truth as it appears from the evidence, which evidence you must consider with the instructions of the court."

The jury retired a third time at 5:18 and approximately thirteen minutes thereafter returned a verdict of guilty.

This court, on more than one occasion, has criticized the giving

of such a charge after the jury has reported it has reached an impasse, although in most instances we have held the instruction non-prejudicial. Furthermore, we observe that the Committee on Uniform Pattern Instructions has appended this comment to § 10:20 in the 1973 Supplement at page 81: "The Committee recommends that this instruction not be given in criminal cases."

We wish to reemphasize the admonitions and caveats fashioned by this court with respect to coercive instructions which appear in the following cases: *State v. Oswald,* 197 Kan. 251, 260, 261, 417 P. 2d 261; *State v. Basker,* 198 Kan. 242, 247, 424 P. 2d 535; *State v. Ingram,* 198 Kan. 517, 518, 426 P. 2d 98; *State v. Earsery,* 199 Kan. 208, 428 P. 2d 794; *Bush v. State,* 203 Kan. 494, 498, 454 P. 2d 429; and *State v. Boyd,* 206 Kan. 597, 600, 601, 481 P. 2d 1015. We should add that instructions which savor of coercion, pressure or constraint are especially to be avoided after jurors have reported themselves as unable to agree upon a verdict.

Our disapproval of the instruction and its timing is not to say, however, that reversal on that ground is required. In the first place no objection was interposed to the instruction when it was given. We have said many times that a matter to which no objection was raised in the trial court is not to be considered on appeal. (See cases in 1 Hatcher's Kansas Digest [Rev. Ed.] Appeal & Error, §§ 304,344. See, also, *State v. Pyle,* 143 Kan. 772, 782, 57 P. 2d 93, and *State v. Boyd,* supra, each dealing with the failure to object to a coercive instruction.)

Secondly, it is not every error which can be said to rise to the height of prejudice or to constitute prejudicial error. This court is enjoined by statute to disregard technical errors, and defects and irregularities which do not prejudicially affect the substantial rights of the parties, and our cases are many to such effect. In view of the compelling, not to say overwhelming, evidence in this case we deem the instruction as not approaching prejudicial proportions to the damage of defendant's cause.

Finally, the defendant challenges the validity of K. S. A. 21-107a, which was in effect on the date he was sentenced. The constitutionality of the statute is attacked on two grounds: (1) that it violates the due process and equal protection provisions of the Fourteenth Amendment and (2) that it constitutes cruel and unusual punishment in violation of the Eighth Amendment. We believe the argument must fail on both counts.

The due process and equal protection argument has been advanced before this court a number of times. In a general way, we may say the argument is based on the premise that the prosecuting attorney can, in effect, dictate or control the sentence to be imposed against an accused either by the introduction or by the withholding of evidence of previous convictions. This, the defendant maintains, is an impermissible delegation of authority and is used unfairly by prosecutors as a lever in conducting plea bargaining negotiations. These arguments were rejected by this court in *Gladen v. State*, 196 Kan. 586, 413 P. 2d 124, where we held:

"The exercise of reasonable discretion in the application of a law to those of the same class does not necessarily or generally render the law unconstitutional as depriving one of equal protection of the law. (Following *In re Skinner*, 136 Kan. 879, 18 P. 2d 154.)" (Syl. ¶ 1.)

"The exercise of discretion by a county attorney in seeking to invoke the provisions of the habitual criminal act (K. S. A. 21-107a) without a showing of discrimination by reason of willful, arbitrary, designed, deliberate, intentional or concerted action, does not deprive one of due process or equal protection of the law guaranteed by the fourteenth amendment to the United States Constitution in a case where an enhanced penalty was imposed under the act." (Syl. ¶ 2.)

We have adhered to the *Gladen* holding in subsequent cases coming before us. Today as in the past, it is our opinion that *Gladen* adequately explains the position of this court on the due process and equal protection issues. (*State v. McCarty*, 199 Kan. 116, 122, 427 P. 2d 616; *State v. Shaw*, 201 Kan. 248, 249, 440 P. 2d 570; *Scoggins v. State*, 203 Kan. 489, 491, 454 P. 2d 550; *State v. Coutcher*, 198 Kan. 282, 286, 287, 424 P. 2d 865; *State v. Eaton*, 199 Kan. 610, 611, 433 P. 2d 347.)

We have searched the record and found nothing to suggest that the county attorney exercised his discretion improperly in seeking to invoke the provisions of K. S. A. 21-107a against this defendant, nor were we able to detect any grounds for suspecting he has discriminated, on the basis of race or otherwise, in asking that the Act be applied in criminal cases. In *Addington v. State*, 198 Kan. 228, 424 P. 2d 871, we said:

". . . If the county attorney acts corruptly, willfully and in bad faith in invoking the Act, the sentence imposed thereunder may be vacated pursuant to K. S. A. 60-1507, but the burden of proof rests upon the movant. (Citing cases.)" (p. 235.)

We are of the opinion the defendant has not sustained that burden in this case.

Mr. Troy was sentenced as a second offender to serve a term of not less than ten nor more than twenty years, such being double the penalty prescribed by K. S. A. 21-523 for burglary in the second degree. He now urges most strenuously that imposition of such a sentence pursuant to the provisions of the Habitual Criminal Act constitutes cruel and unusual punishment within the prohibition of the Eighth Amendment.

In general it may be said that statutes authorizing heavier penalties against recidivists than against first offenders do not, as such, inflict cruel and unusual punishment. (39 Am. Jur. 2d, Habitual Criminals and Subsequent Offenders, § 5, p. 312; 33 A. L. R. 3d 335, Anno: Cruel Punishment—Length of Sentence, §§ 2 [a], 5, 11.)

The question presented is not new to this court. It first surfaced in *State v. Coutcher,* supra, where the defendant, after being convicted of illegal possession and sale of marijuana, was sentenced to serve a term of 18 years as a third offender. The court pointed out in *Coutcher* that the Eighth Amendment prohibition is generally considered as directed against physical cruelty, but acknowledged there was authority to the effect it might be invoked against excessively long and disproportionate prison terms. The validity of punishment imposed under an habitual criminal act, we said, "has long been recognized and the theory is not repugnant to the Federal Constitution." (p. 289.) The court went on to hold that on the record which was before it the sentence was not so disproportionate to the offense as to constitute cruel and unusual punishment.

In the recent case of *Cipolla v. State,* 207 Kan. 822, 486 P. 2d 1391, the petitioner challenged a lengthy sentence imposed against him after his conviction on a charge of grand larceny. Our decision is reflected in Syllabus 3:

"A sentence of not less than 40 years nor more than 60 years permitted by K. S. A. 21-534 as enhanced by K. S. A. 21-107a, under the circumstances disclosed by the record, is not so disproportionate to the offense and petitioner's past history of crime as to constitute cruel and unusual punishment."

In the course of the opinion, prepared by Mr. Justice Fromme, the court made this observation:

"It has long been settled that habitual criminal statutes themselves do not inflict cruel and unusual punishment by providing for increased terms of imimprisonment for defendants previously convicted of crime. (*McDonald v. Massachusetts,* (1901) 180 U. S. 311, 45 L. Ed. 542, 21 S. Ct. 389; see also Anno 33 A. L. R. 3d 335.)" (p. 824.)

*Cipolla v. State,* supra, was cited in *State v. Miles,* 213 Kan. 245, 515 P. 2d 742, in which we upheld an enhanced sentence and said

that it fell within the limits prescribed by the applicable statutes, K. S. A. 1972 Supp. 21-4501 and 21-4504, and thus could not be said to be excessive.

We have not failed to note the defendant's references to *Furman v. Georgia,* 408 U. S. 238, 33 L. Ed. 2d 346, 92 S. Ct. 2726, and his attempt to extend the rationale of that decision to the case at hand. We are unable to perceive any clear cut analogy.

In a Per Curiam five to four decision, the court held basically, but with diverse concurrences, that the imposition and carrying out of the death penalty in the three cases which were before it constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. Each of the Justices composing the majority prepared his own concurring opinion expressing a personal point of view. The case presents no strong consensus that the penalties of death imposed in the subject cases were of themselves cruel and unusual. Indeed, the concurrences deal in large measure with the probability of injustice, racially related for the most part, flowing from the discriminatory manner in which sentences of death are sometimes, if not often, imposed. Indeed, Mr. Justice White, in his concurrence, went so far as to say he "did not at all intimate that the death penalty is unconstitutional *per se."* (pp. 310, 311.)

We do not read the *Furman* decision as providing precedent in support of the defendant's position. There is a vast difference, in quality as well as in kind, between a sentence of imprisonment for years and the harsh and irreversible punishment of death. Mr. Justice Stewart makes a point of this where he says:

"The penalty of death differs from all other forms of criminal punishment, not in degree but in kind. It is unique in its total irrevocability. It is unique in its rejection of rehabilitation of the convict as a basic purpose of criminal justice. And it is unique, finally, in its absolute renunciation of all that is embodied in our concept of humanity." (p. 306.)

The defendant appears to lean largely on language excerpted from the concurring opinion of Mr. Justice Douglas wherein he expresses his belief that any system permitting optional punishment offends the proscription of the Eighth Amendment. We have high regard for the legal competence and impeccable literary style of Justice Douglas, but his concurrence must be said to mirror his personal views rather than the composite judgment of the court.

We conclude that the judgment of the trial court must be affirmed, and it is so ordered.