NOT DESIGNATED FOR PUBLICATION

No. 116,591

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JUAN VALVERDE JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Finney District Court; ROBERT J. FREDERICK, judge. Opinion filed October 27, 2017. Affirmed.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Nicholas C. Vrana*, assistant county attorney, *Susan Hillier Richmeier*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM:  Defendant Juan Valverde Jr. has challenged as constitutionally cruel and unusual punishment the 39-month sentence the Finney County District Court imposed on him for failing to maintain his registration as a violent offender under the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 et seq. Valverde asserts a categorical challenge to the sentences imposed on violent offenders for KORA violations. Given the stringent standards governing those claims, we find the sentence to be

1

constitutionally acceptable and, therefore, affirm the district court's punishment of Valverde.

Valverde was convicted of involuntary manslaughter in 1999 and aggravated assault with a court finding that he used a deadly weapon in 2014. Each of those convictions required that he register as a violent offender under KORA. The statutory registration scheme applies to criminal defendants convicted of designated sex crimes, violent crimes, and drug crimes. A designated offender must register quarterly with the sheriff's departments in the counties where he or she resides, works, or attends school and must promptly update any changes in registration information. Much of the information is made available to the general public. Failure to register as required under KORA is itself a felony. The presumptive sentences vary depending on the nature of the violation, and repeat KORA violators face increased punishment. K.S.A. 2016 Supp. 22-4903.

Valverde was 12 days late in updating registration information in July 2015 and failed to make a required quarterly registration in October 2015. The county attorney then filed charges against Valverde for violating KORA. Eventually, Valverde and the county attorney entered into an agreement under which Valverde pleaded no contest to one count of failure to register as a first-time KORA violator, a severity level 6 person felony. Valverde's criminal history includes convictions in addition to those for involuntary manslaughter and aggravated assault. For purposes of this appeal, Valverde does not dispute he has convictions for two person felonies that placed him in criminal history category B. The district court imposed a midrange presumptive guidelines sentence of 39 months in prison on Valverde after denying his request for a dispositional departure to probation. Valverde has appealed.

For his single issue on appeal, Valverde argues the sentence he received for the KORA violation reflects a categorically cruel and unusual punishment violating the

Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights. Valverde has raised this argument for the first time on appeal.

Appellate courts typically will not address issues a party has failed to present to the district court. But that rule is not invariable. An appellate court may consider a new issue if it:  (1) presents a question of law arising on proved or admitted facts and is finally determinative of the case; (2) is necessary to serve the ends of justice or to prevent denial of a fundamental right; or (3) would uphold the decision of the district court on a proper ground when the district court has relied on an incorrect ground. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). The Kansas Supreme Court has taken up categorical challenges to the constitutionality of criminal punishments for the first time on appeal. See *State v. Dull*, 302 Kan. 32, 38-39, 351 P.3d 641 (2015) (lifetime postrelease supervision). This presents an analogous circumstance, so we may consider the issue under the first exception and probably the second, as well. Valverde, likewise, may assert a categorical challenge to the constitutionality of the punishment scheme on direct appeal, even though an attack on his individual guidelines sentence would be improper. See *State v. Huerta*, 291 Kan. 831, 839-41, 247 P.3d 1043 (2011).

We suppose without deciding that Valverde's categorical challenge lies under both the United States Constitution and the Kansas Constitution. See *State v. Wieland*, No. 114,900, 2017 WL 657999, at *6 (Kan. App.) (unpublished opinion), *rev. denied* 306 Kan. ___ (August 24, 2017). But the analytical model for each ought to be the same, so neither one provides greater protection to a criminal defendant. See *State v. Petersen-Beard*, 304 Kan. 192, 210-11, 377 P.3d 1127 (2016) (Eighth Amendment and § 9 of the Kansas Constitution Bill of Rights construed to secure same protections against cruel and unusual punishment); *Wieland*, 2017 WL 657999, at *6.

In making a categorical challenge under the Eighth Amendment, a criminal defendant argues a punishment to be so disproportionately severe for the offense or for a

broad class of offenders as to be constitutionally unacceptable in every instance. *Graham v. Florida*, 560 U.S. 48, 60-61, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010); *State v. Williams*, 298 Kan. 1075, 1086, 319 P.3d 528 (2014); *State v. Mossman*, 294 Kan. 901, 927-28, 281 P.3d 153 (2012). That is, the sentence is manifestly excessive for the criminal wrong without regard to the particular facts or circumstances of the defendant's case. In assessing a categorical challenge, the courts consider first whether a "national consensus" would preclude the punishment and then whether the punishment fails to comport with a reasoned judicial application of the Eighth Amendment. *Graham*, 560 U.S. at 61 (first step asks "whether there is a national consensus against the sentencing practice"; second step entails the court's "independent judgment whether the punishment in question violates the Constitution" in light of case precedent and "'its own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose'") (quoting *Kennedy v. Louisiana*, 554 U.S. 407, 421, 128 S. Ct. 2641, 171 L. Ed. 2d 525 [2008]); *Mossman*, 294 Kan. at 929.

With the parties' assistance, we have identified six other states that statutorily require fairly broad registration of violent offenders and impose criminal penalties for the failure to comply. The range of crimes triggering registration varies from state to state, as does the punishment for registration violations. But the schemes are generally comparable to KORA in those respects.[1] Three states impose registration requirements for individuals convicted of violent crimes directed at specific classes of victims—either children or law enforcement officers. And California requires individuals convicted of a wide range of gang related crimes to register.[2] The remaining 39 states and the District of Columbia apparently have not legislatively addressed registration of violent offenders, according to the parties' briefing. Apart from surveying statutory enactments, the parties have pointed us to nothing else they suggest informs a "national consensus" on the registration of violent offenders.

4

[1]The comparable states are Connecticut, Florida, Indiana, Montana, Oklahoma, and Washington. Connecticut requires a person convicted of committing an offense "with a deadly weapon" to register. Conn. Gen. Stat. Ann. § 54-280a(a)(1). Failure to comply with the registration is a class D felony punishable by up to 5 years' imprisonment. Conn. Gen. Stat. Ann. § 54-280a(c); Conn. Stat. Ann. § 53a-35a(8). Florida requires "career offenders" to register, a class defined as anyone who is "a habitual violent felony offender, a violent career criminal, or a three-time violent felony offender . . . or . . . a prison release reoffender." Fla. Stat. § 775.261(2)(a). Failure to comply is a third-degree felony punishable by imprisonment up to 5 years. Fla. Stat. § 775.261(8); Fla. Stat. § 775.082(3)(e). Indiana requires violent offender registration. Ind. Code § 11-8-8-7; Ind. Code § 11-8-8-5. Failure to comply is a level 5 or 6 felony punishable by up to 6 years' imprisonment. Ind. Code § 11-8-8-17; Ind. Code § 35-50-2-6(b); Ind. Code § 35-50-2-7(b). Montana requires violent offender registration. Mont. Code Ann. § 46-23-504. Failure to comply is punishable by up to 5 years' imprisonment. Mont. Code Ann. § 46-23-507. Oklahoma requires violent offender registration. Okla. Stat. tit. 57 § 593. Failure to comply is punishable by up to 5 years' imprisonment. Okla. Stat. tit. 57 § 599. Washington provides registration for "[f]elony firearm offenders." Wash. Rev. Code § 9.41.330. Failure to comply "is a gross misdemeanor," punishable by 364 days "in the county jail." Wash. Rev. Code § 9.41.335; Wash. Rev. Code § 9.a.20.021(2).

[2] In Illinois, a "violent offender against youth" is required to register. 730 Ill. Comp. Stat. Ann. § 154/10(a). Failure to comply can be a class 2 or 3 felony depending on the type of violation, punishable by up to 5 years. 730 Ill. Comp. Stat. § 154/60; 730 Ill. Comp. Stat. § 5/5-4.5-35(a) and 40(a). Similar to Illinois, North Dakota requires registration for "[o]ffenders against children." N.D. Cent. Code § 12.1-32-15. Failure to comply is a class C felony punishable by up to 5 years in prison. N.D. Cent. Code § 12.1-32-15(9); N.D. Cent. Code § 12.1-32-01(4). Louisiana requires "[r]egistration of offenders who commit violent offenses against peace officers." La. Stat. Ann. § 15:643. Crimes include murder, manslaughter, and battery, among others. La. Stat. Ann. § 15:642(2)(c). Failure to comply is punishable by imprisonment up to 90 days. La. Stat. Ann. § 15:646. Lastly, California requires registration of individuals convicted of gang crimes. Cal. Penal Code § 186.30. Failure to comply is a misdemeanor. Cal. Penal Code § 186.33(a).

Based on that information, we cannot say Valverde has demonstrated a national consensus *against* violent offender registration or that KORA itself is such an outlier, either in scope or penalty, as to be singularly harsh in a way suggesting, let alone establishing, constitutional infirmity. Half a dozen other states have similar schemes. That, on its face, seems to undercut a consensus against violent offender registration. And we have been directed to nothing indicating any of those states, in practice, curtails or

avoids violent offender registration in a way at odds with what its statutes permit. See *Graham*, 560 U.S. at 66-67 (A particular punishment, though statutorily permitted, may be so rarely imposed as to indicate consensus against it.).

The test in *Graham* does not, however, demand legislative uniformity less one to demonstrate a consensus, so a handful of states, though united in their approach, might be sufficiently at odds with the remaining states to be in constitutionally perilous territory. Here, the four states that have enacted narrow registration statutes arguably stand in the opposite camp: They have considered violent offender registration and have chosen an approach markedly more limited than what Kansas and six other states have adopted. Those four states, of course, no more represent a national consensus than do the seven states with broad violent offender registration schemes.

Again, from what has been argued to us, the remaining states are inscrutable on violent offender registration. We have no indication any of them have legislatively considered and rejected measures to impose violent offender registration or, perhaps even more tellingly, have repealed such measures. Those states, then, do not portray a consensus against violent offender registration, so much as a consensus of indifference about it. On that basis, Valverde has failed to make his case under the first part of the test for categorical challenges outlined in *Graham*.

Valverde also comes up short on the second part that draws on case authority and constitutional history to inform the application of the Eighth Amendment to his punishment of 39 months in prison for failing to register as a violent offender. The hallmark of unconstitutionality for a term of imprisonment is a marked disproportionality of that term to the nature of the offense, especially taking into account the traditional purposes of punishment—retribution, incapacitation, deterrence, and rehabilitation. See *Graham*, 560 U.S. at 67-68, 71. In a categorical challenge, the analysis focuses on the statutorily mandated punishment and on the class of criminal defendants affected rather

6

than on the circumstances of the particular defendant asserting the claim. We turn to those considerations.

Here, the class includes anyone required to register under KORA as a violent offender. So we must consider the constitutionality of the registration scheme for persons convicted of intentional first-degree murder, not just aggravated assault with a deadly weapon. See K.S.A. 2016 Supp. 22-4902(e)(1)(B), (e)(2). Likewise, the base penalty for a severity level 6 KORA violation is 17 to 19 months in prison with a statutory presumption that the district court will place the defendant on probation. The base penalty applies to a defendant with no scoreable criminal history. For criminal history purposes, the conviction triggering KORA registration cannot be scored in determining the guidelines punishment for a registration violation. *State v. Deist*, 44 Kan. App. 2d 655, 657-58, 239 P.3d 896 (2010).

The Kansas Supreme Court has consistently recognized that KORA promotes a substantial public safety interest by monitoring and making available information about individuals convicted of dangerous crimes who as a group pose an elevated risk of reengaging in that underlying criminal activity. See *State v. Meredith*, 306 Kan. 906, 399 P.3d 859, 863 (2017) (declining to draw distinction as matter of law between sex offenders, as group, and drug offenders and violent offenders with respect to public purpose in requiring KORA registration); *Petersen-Beard*, 304 Kan. at 207-08 (outlining public purpose in requiring registration of sex offenders). In turn, the criminal punishment imposed for failing to comply with KORA necessarily promotes those same public interests especially by deterring violations.

A first-time KORA violator whose only previous crime was the one requiring registration typically would be placed on probation in conformity with the statutorily presumptive disposition. That form of punishment can't be characterized as impermissibly retributive or incapacitating under the Eighth Amendment even for a

7

comparatively minor offense. Eighth Amendment history and jurisprudence affords an especially wide deference to legislative determinations of appropriate punishments for adult offenders in noncapital cases. See *Harmelin v. Michigan*, 501 U.S. 957, 994-96, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (finding mandatory life sentence without parole for possession of more than 650 grams of cocaine did not violate Eighth Amendment); 501 U.S. at 998-99 (primacy of legislature in setting prison terms for specific crimes) (Kennedy, J. concurring, joined by O'Connor, J. and Souter, J.); *United States v. Reingold*, 731 F.3d 204, 211 (2d Cir. 2013) (deference to legislative determinations of criminal punishments). The base punishment for a KORA violation doesn't violate the Eighth Amendment.

The district court, of course, imposed a longer sentence on Valverde and sent him to prison rather than placing him on probation. The reason, however, lay not in the nature of the KORA violation itself but in Valverde's criminal history apart from that violation. Whatever his crime of conviction, Valverde would have received a harsher sentence than someone without any criminal history. So it's not entirely obvious that the enhanced sentence Valverde received because of his criminal history figures into a categorical challenge under the Eighth Amendment to the punishment imposed for KORA violations.

Assuming that it does, the United States Supreme Court has found no Eighth Amendment violations for lengthy sentences imposed for relatively minor crimes based on a defendant's status as a repeat felon. See *Ewing v. California*, 538 U.S. 11, 30-31, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003). The Court recognized that statutes imposing increased penalties for successive crimes reflect a legitimate legislative "policy choice that individuals who have repeatedly engaged in serious or violent criminal behavior, and whose conduct has not been deterred by more conventional approaches to punishment, must be isolated from society in order to protect the public safety." 538 U.S. at 24; see also *State v. Troy*, 215 Kan. 369, Syl. ¶ 7, 524 P.2d 1121 (1974) ("In general it may be said that statutes which authorize the imposition of heavier penalties against recidivists or

habitual offenders than against first offenders do not, as such, inflict cruel and unusual punishment in violation of the Eighth Amendment."); *United States v. Young*, 766 F.3d 621, 627-28 (6th Cir. 2014) (discussing recidivism as factor in rejecting claimed Eighth Amendment violation); *United States v. Strahan*, 565 F.3d 1047, 1052-53 (7th Cir. 2009) (recidivism permits enhanced punishment; life sentence for conspiracy to distribute illegal drugs does not violate Eighth Amendment for defendant with two previous felony drug convictions). Based on that precedent, Valverde's sentence does not violate the Eighth Amendment if the class were defined as defendants with past convictions for two or more felonies or, more particularly, person felonies.

Affirmed.